FREDERICK A. CONSTABLE and Others, Respondents, *v.* HENRY ROSENER, Appellant.

*Husband and wife — abandonment of a husband without cause — he is not liable for necessaries thereafter furnished to his wife — burden of proof in this respect in a suit therefor.*

A husband, whose wife abandons him without just cause and refuses his offer to support her if she will return to him, is not liable for necessaries furnished to the wife while thus living apart from him.

*Semble,* that a person who seeks to recover from a husband the value of necessaries furnished to his wife, while she was living apart from him, must show that the separation was not due to the wife's fault.

APPEAL by the defendant, Henry Rosener, from a judgment of the Appellate Term of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 27th day of June, 1902, reversing a judgment of the Municipal Court of the city of New York, borough of Manhattan, in favor of the defendant, entered on the 7th day of February, 1902, which dismissed the complaint upon the merits, and also reversing an order of said Municipal Court, entered on the 7th day of February, 1902, denying the plaintiff's motion for a new trial made upon the minutes.

*Henry Thompson,* for the appellant.

*Alfred Epstein,* for the respondents.

INGRAHAM, J.:

This action was commenced in the Municipal Court of the city of New York and resulted in a judgment in favor of the defendant.

The complaint, which was in writing, alleged that between the 14th and 16th of October, 1901, the plaintiffs sold and delivered to the wife of the defendant herein, at her special instance and request, necessities for her use of the value and amounting to the agreed price of $209.95. The answer denies knowledge or information sufficient to form a belief as to this allegation, and alleges as a further and separate defense that in the month of October, 1897, the defendant's wife voluntarily and without cause deserted and abandoned the defendant and refused and has ever since refused to return and live with him although the defendant urged her to do so, and has at all times been ready and willing to support and provide for her if she would return and live with him ; that the defendant's wife has not, nor has she ever had since the said desertion and abandonment, any authority to purchase goods for the defendant or upon his credit, and that she had no authority whatever from the defendant to contract the indebtedness alleged in the complaint.

Upon the trial before the justice it was conceded that the plaintiffs sold and delivered to the wife of the defendant goods, wares and merchandise of the value and amounting to the agreed price of $209.95 ; that these articles had not been paid for, and that the articles were necessaries and suitable to her station in life. Upon this concession the plaintiffs rested. The defendant then testified that his wife left him in October, 1897, when she abandoned him; that after that abandonment he asked her to return and live with him many times ; that she went to Paris when she left him ; that he went to Paris after her and asked her to return and live with him ; that she refused to allow the defendant to remain with her in the same room in the hotel where she was stopping, and refused to return with him, whereupon he returned to New York; that she has lived away from him continuously from October, 1897, without his consent, and that he never gave her any authority to purchase goods on his credit, and never had an account with the plaintiffs. In rebuttal the defendant's wife was called by the plaintiffs and testified that in October, 1897, she was living with the defendant at the Hoffman House in the city of New York, when she left for Europe ; that the defendant provided for her after she left until a year before the trial, when he refused to send her any more money ; that the cause of her leaving him was

that she could not respect him; that the reason for this was that the defendant was accused of being a thief, and that he accepted the accusation; that the witness asked the defendant to defend his name that the defendant obtained money from his wife's father to send her to Europe, and then refused to give his wife the money; that he had pawned his wife's jewelry to use it in his business and gave his wife none of the money realized therefrom, and that the defendant never asked her to return to him; that the witness came to New York from Paris in December, 1900, with her father, but did not see her husband, and that before that time the defendant had sent her $100 per month.

The defendant then denied that he had ever received any money from his wife's father; that he ever pawned his wife's jewelry, or ever got any money for it; testified that he sent her money from time to time until December, 1900, hoping that she would return and live with him; that he stopped sending her money when she came to New York without visiting him, and then he made up his mind that she would not return.

Upon this testimony the court rendered judgment for the defendant, finding that the defendant's wife left her husband without cause, and that, therefore, the defendant was not liable. The Appellate Term reversed this judgment and the defendant appeals.

The liability of the husband for debts incurred by the wife is based upon the ordinary principles of agency. This is the universal rule in this country and in England. In *Debenham* v. *Mellon* (6 App. Cas. 24) the question came before the House of Lords, when Lord SELBORNE stated the principle upon which such a liability is imposed: "The point determined was one of much importance, namely, that the question whether a wife has authority to pledge her husband's credit is to be treated as one of fact, upon the circumstances of each particular case, whatever may be the presumption arising from any particular state of circumstances. That principle is now controverted, and the first question before your Lordships is, whether the mere fact of marriage implies a mandate by law making the wife (who cannot herself contract, unless so far as she may have separate estate) the agent in law of her husband, to bind him and to pledge his credit, by what otherwise would have been her own contract if she had been a *feme sole?* On that point I think it

enough to say that, according to all the authorities, there is no such mandate in law from the fact of marriage only, except in the particular case of necessity; a necessity which may arise, when the husband has deserted the wife, or has by his conduct compelled her to live apart from him, without properly providing for her." And Lord BLACKBURN said: "If there had been desertion and cruelty, so that she had not been supplied with what was proper, no question arises here as to whether she would not have had authority to pledge her husband's credit to get such things."

When, however, the husband and wife are living apart, there is no implied agency such as results from their living together; and it would seem that, to hold the defendant liable for purchases made by the wife, the burden was on the plaintiff to show that the defendant did not suitably provide for his family according to his and their condition; and this is the rule in this State. (*Keller* v. *Phillips*, 39 N. Y. 351.) In the American and English Encyclopædia of Law (Vol. 15 [2d ed.], 883) the rule is stated: "Where the husband and the wife are living separate, the presumption is against the authority of the wife to bind the husband by her contracts for necessaries, and the tradesman seeking to hold the husband liable for necessaries furnished to the wife must show affirmatively, in order to establish his cause of action, the special circumstances which fix the responsibility on the husband. Nor will the fact that the tradesman had no knowledge that the wife was living separate from her husband avail to relieve him from the burden of proof;" on page 888 of the same volume it is said: "If a wife leaves her husband without sufficient cause, and without his consent, she carries with her no authority to pledge his credit for her support and maintenance, in the absence of any express promise on the part of the husband to pay for such necessaries. And if a tradesman brings an action against a husband for goods furnished to a wife while she is living apart from her husband, it is for him to show that she was absent from some cause that would justify her absence and that she had not gone away of her own accord. And the rule has been laid down that the fact that the tradesman had no knowledge that the wife was living separate from her husband will not avail to relieve him from the burden of proof." The authorities to support this proposition, both in this country and in England, are collated in a note and fully sustain the statement of

the text.   In *Catlin* v. *Martin* (69 N. Y. 393) that rule was applied in a case where the wife, encouraged by the plaintiff, her mother, has left her husband against his will and without justifiable cause, and went to live with the plaintiff.   There is no case to which our attention has been called unless it be *Hatch* v. *Leonard* (165 N. Y. 435), relied on by the Appellate Term, which we will consider later, that is an authority for the proposition that the husband is bound to support his wife who left him without cause, when he was ready and willing to support her if she would return and live with him.

The case of *Hatch* v. *Leonard* when in this court is reported in 38 Appellate Division, 128.   The complaint alleged a sale and delivery to the defendant, at his request, of certain merchandise, the "sale and delivery being to, and said request and the promise to pay therefor being made by the wife of defendant, defendant's agent."   This was denied by the defendant, and at the trial the plaintiff proved the delivery of the goods to the wife of defendant, and that the goods were actually used by her for herself and her children.   It further appeared that at the time the defendant and his wife were actually living apart and had so lived for some years.   This court held that when it appeared that the husband and wife were living separate and apart from each other, the presumption that the wife was the agent of the husband to charge him for purchases made by her ceased; "that the plaintiff could recover for goods delivered to a wife living separate from her husband, if they were necessaries, and if it appeared that he did not supply them or furnish her with money to buy them, and that the plaintiff, seeking to recover upon that theory of liability, must allege it in his complaint."   Upon an appeal to the Court of Appeals (165 N. Y. 435) the judgment was reversed.   The chief judge, in delivering the opinion of the court, held that upon a complaint which alleged a sale of goods to the defendant and which contained no reference whatever to the defendant's wife, it could not be questioned that the plaintiff could prove under it that the goods were purchased by the defendant's wife for herself and her children and that they were necessaries; that where the complaint alleged that the husband had expressly authorized his wife to make purchases, the allegations of the complaint are satisfied by proving either an express agency or the facts from which the law implies an agency;

and then follows: "For notwithstanding the separation of husband and wife, the former is bound to support the latter together with her children, in the absence of either an agreement or a decree of the court relieving him from that burden, and in such a case if the wife purchases only those things which may be held to be necessaries, the law implies an agency on her part to make the purchase on the husband's credit." And the court quote from *Cromwell* v. *Benjamin* (41 Barb. 560) as an authority: "But the husband may be liable for necessaries furnished to the wife, in certain cases, though the existence of an agency or assent, express or implied in fact, is wholly disproved by the evidence, and this upon the ground of an agency implied *in law*, though there can be none presumed in fact," — and there the quotation by the chief judge ends. The opinion, however, in that case continues: "It is a settled principle in the law of husband and wife, that by virtue of the marital relation, and in consequence of the obligations assumed by him upon marriage, the husband is legally bound for the supply of necessaries to the wife, so long as she does not violate her duty as wife; that is to say, so long as she is not guilty of adultery or elopement." And Judge GRAY, in the dissenting opinion in *Hatch* v. *Leonard*, which was concurred in by two other members of the court, thus states the rule: "Whatever presumption of authority in the wife is to be inferred from cohabitation, her separation from her husband, necessarily, negatives that presumption. While they live together, when she purchases necessaries for herself or family, the law will presume that she had the authority of her husband for doing it and she is privileged to pledge the credit of her husband. It is the cohabitation, or living together of the parties, in their marital relation, upon which the law founds the duty of the husband and, in the case of his neglect to perform it, sustains the right of another to recover for supplying necessaries to his wife. The principle is then applicable of an implied authority in her to bind her husband. * * * Whatever the implied authority of the wife to bind her husband in the purchasing of such necessaries as are reasonable, in view of her social status or condition, the separation, or non-cohabitation, of the parties essentially changes the legal situation. If the separation is not due to her misconduct, the husband will continue to be bound to furnish

her with those things which are reasonably necessary for her or their children, and, if he fails in that respect, she will be entitled to a general credit to that extent; but the theory or implication of any agency in her is negatived by the fact of the separation." The question before the court was one of pleading, a majority of the court holding that the question was one of agency — agency, which the law inferred from the relation that exists between a husband and wife, where she either resides with the husband or lives separate from him.

If, however, the wife without cause desert her husband and refuses to live with him and to accept the support which he is willing and able to give to her, the separation ends any implied authority based upon the marriage for the wife to make contracts upon the credit of the husband, or liability of the husband for necessaries furnished to the wife. It has never been held, so far as I know, that a wife could voluntarily and without cause leave her husband, repudiating her obligations that she incurred upon her marriage, and then compel the husband to support her separated from him, and if his duty to his wife is performed when he offers to support her in accordance with his means and station in life when living with him, she has no implied authority to purchase the things necessary for her support from others and make her husband liable. It is quite evident, we think, that Chief Judge PARKER, in stating the conditions from which the law will imply an agency, did not intend to state that in every case in which a wife is living separate from her husband and he fails to supply her with money necessary for her support, she could make him liable for necessaries furnished to her, for he would then be liable, although she was living apart from him in open adultery. Certainly that is not and never has been the law and is directly contradicted by the case cited.

The question here is, whether the defendant is liable for necessaries furnished to his wife when she is living separate from him without cause, and when he has offered to support her if she would return and live with him. His liability depends upon a failure to perform the duty that the law imposes upon him to support his wife. That duty is performed when the husband provides a home

for his wife and supplies it with the necessaries that are proper in view of his means and the position of the parties. If the wife leaves the husband without cause and refuses to return to the home thus provided, it is the wife that has violated her duty to the husband, and the husband is under no obligation to support the wife thus living apart from him in violation of her obligations. The obligations of marriage are reciprocal, and one cannot refuse to recognize them and then force the other to respect them. Although the rule seems to be well settled that where a husband and wife are living apart, the burden is on the plaintiff seeking to impose liability upon the husband for necessaries furnished to the wife of showing that the separation was without fault on the part of the wife, that question is not in this case, for here the justice took all of the evidence, and it was sufficient to justify him in finding that the separation was solely the fault of the wife; that the husband had invited her to return and live with him and was then ready and willing to support her.

It follows that the determination of the Appellate Term must be reversed and the judgment of the Municipal Court affirmed, with costs in this court and in the court below.

PATTERSON, O'BRIEN and HATCH, JJ., concurred.

VAN BRUNT, P. J. (concurring):

I concur. The husband is only liable when he has failed to perform a duty. The husband owes no duty to support a wife who refuses to live with him without fault of his own.

Determination of Appellate Term reversed and judgment of Municipal Court affirmed, with costs in this court and in the court below.