(68 Misc. Rep. 290.)

PEOPLE ex rel. COMMISSIONER OF PUBLIC CHARITIES FOR CITY OF NEW YORK v. DUFFIN.

(Court of General Sessions, New York County. June, 1910.)

1. HUSBAND AND WIFE (§ 315*)—ABANDONMENT OF WIFE—RES JUDICATA.

Where a man is convicted in New York for abandoning his wife and children, and gives a bond for their support for a year, and supports them for that time, the order, under which the bond was given is not an adjudication of an abandonment after the year, so as to sustain conviction of the husband as a disorderly person, under Greater New York Charter (Laws 1901, c. 466) § 687, committed after the period of the bond.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 315.*]

2. HUSBAND AND WIFE (§ 304*)—ABANDONMENT—EVIDENCE.

Where a husband gives a bond for the support of his wife and children for one year, and after such period the wife was living apart from her husband in a place of her own choice, that he failed for 18 days after expiration of the year to furnish her with money, she not offering to

live with him, does not justify conviction for abandonment after expiration of the bond.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 304.*]

Action by the People, on the relation of the Commissioner of Public Charities for the City of New York, on complaint of Delia Duffin, against Michael J. Duffin. From the judgment, defendant appeals. Reversed.

James Nugent, for appellant.

Archibald R. Watson (Herman Stiefel, of counsel), for respondent.

CRAIN, J. The appellant was, on April 19, 1910, in the First Division City Magistrate's Court, Fourth District, before Hon. Henry Steinert, city magistrate, adjudged a disorderly person, in having abandoned his wife and child in the city of New York without adequate support, leaving them in danger of becoming a burden on the public, and was ordered to pay to the commissioner of public charities of the city of New York, for the support of his wife and child, the sum of $6 a week, and to give a bond in the sum of $208 for the faithful performance of the order, and, upon his default in the giving of said bond, that he be committed to the city prison for a term not to exceed six months. Feeling aggrieved at the judgment and order of the city magistrate, the defendant appealed to this court.

The defendant and the complainant are husband and wife. They have one child. The defendant was, on the 25th day of February, 1909, ordered by a city magistrate of the City Magistrate's Court, First Division, to pay $6 a week for the support of the complainant. He gave a bond to comply with the order of the court. After the expiration of the order made by the city magistrate, namely, after February 25, 1910, and for 18 days prior to the beginning of these proceedings, the defendant did not contribute to the support of his wife and child. The complaining witness has no income from any source. She has no occupation nor means of support. She and her child are sickly, and she herself is not able to work.

Upon these facts, the questions at issue in this proceeding were: First. Did the defendant subsequently to February 25, 1910, and before April 18, 1910, abandon his wife? Second. If so, was such abandonment within the county of New York? Third. If so, what was the earning capacity of the appellant? Fourth. If there was such an abandonment, was the amount named in the order made by the city magistrate reasonable? And, fifth. If there was such an abandonment, was the offer of a home made by the appellant to the complainant made in good faith? For the purposes of this opinion, and for the reasons hereinafter given, it becomes only important to determine whether the evidence before the magistrate justified the conclusion that the defendant, subseqently to February 25, 1910, and before April 18, 1910, abandoned his wife.

The abandonment by a husband of his wife, or wife and children, in the city of New York, without adequate support, leaving them in danger of becoming a public charge, is an offense. The one so doing

is guilty under section 685 of the Greater New York charter (Laws 1901, c. 466.) of being a disorderly person. Before a husband can be lawfully convicted of this offense, it must appear that he actually and willfully deserted his wife. It must be established that he left her, that he withdrew from her the aid and protection which were her due by virtue of the marital relation, and that his conduct in these regards arose neither from her consent, her agreement, nor her procurement, but was the outward manifestation of an attempted evasion by him of his marital obligations. People v. Cullen, 153 N. Y. 629, 47 N. E. 894, 44 L. R. A. 420; People ex rel. Demos v. Demos, 115 App. Div. 412, 100 N. Y. Supp. 968; People ex rel. Palminteri v. Palminteri, 119 App. Div. 82, 103 N. Y. Supp. 1068; People ex rel. Commissioner, etc., v. Costello, decided in the Court of General Sessions, October 21, 1907, not reported.

The proceeding in a magistrate's court, upon the relation of the commissioner of public charities of the city of New York, on the complaint of a wife so left and abandoned, is not intended as a substitute for the action of separation provided for by the Code of Civil Procedure (People ex rel. Demos v. Demos, supra), but is a summary special proceeding of a criminal nature, having for its object the compelling of a husband to do his duty, who without just cause has deserted his wife and is endeavoring to throw upon the city and the authorities having the oversight of the poor the burden of supporting her at the public expense. The relief given in a proper case in such a proceeding is given to the city, and not to the wife or child, and is given because the husband is endeavoring to unload his burden upon the city. The relief which the deserted wife or child gets in such a proceeding is incidental.

The appellant committed this offense of being a disorderly person, in violation of section 685 of the Greater New York charter, at some time prior to February 25, 1909, on which day, as stated in a proceeding of the character mentioned, he was duly adjudged guilty. The appellant in the present proceeding has been adjudged for the second time guilty of the same offense, which in this proceeding is complained of as having been committed at a different time, namely, somewhat more than a year after the abandonment complained of and adjudicated upon in the proceeding which terminated in the judgment and order of February 25, 1909.

In the present proceeding the appellant has been found guilty of being a disorderly person, in that he abandoned his wife and child in the city of New York without adequate support, leaving them in danger of becoming a burden upon the public, at some time between February 25, 1910, and April 18, 1910; February 25, 1910, being the date of the expiration of the order made by the city magistrate in the proceedings of 1909, above referred to, and April 18, 1910, being the date of the complainant's complaint or affidavit in the present proceeding.

It is necessary to the decision of this appeal to consider the effect of the proceeding of 1909 upon the questions open to and necessarily to be litigated in the present proceeding and upon the rights of the parties. How far, if at all, was the adjudication of February 25, 1909,

res adjudicata of any question necessary to be determined in the present proceeding?

An order in abandonment proceedings runs for one year, and there is no provision in the charter (Laws 1901, c. 466) for the punishment of the husband at the expiration of the year. Under a strict construction of its provisions, there is no provision for a "continued" order. If the decision here depended upon the mere language of the charter, unaffected by judicial decisions, the doctrine of former jeopardy could be applied, and the former punishment would be a bar. The former order would not be res adjudicata of the abandonment necessary to be established in the present proceeding, but such order would bar any order herein. The reasoning of the Court of Appeals in the case of People ex rel. Lichtenstein v. Hodgson, 126 N. Y. 647, 27 N. E. 378, although decided before the present charter, requires in effect that the rule which would be so applicable upon a strict construction of the charter be not applied. In that case the relator had been ordered to pay his wife a certain amount weekly, and had appealed from the order, giving a bond under the then law, which, unlike the present charter, did not contemplate a stay pending an appeal. After being at liberty a short time, the order not having expired, he was re-arrested on the same charge of abandonment. On habeas corpus, the court held that an abandonment was a continuing offense, and that staying away from his wife while at liberty constituted a new offense. The court said in effect that, an abandonment being the willful and voluntary desertion by a husband of the wife, so long as the husband so continues to stay away from the wife, he is during every moment of that time committing a new offense.

The reason, therefore, why former jeopardy cannot be successfully pleaded in a second proceeding, is that, if without justification a husband stays away from his wife after the expiration of the order in the first proceeding, such staying away becomes an element of a new abandonment, that is to say, of a second offense; and it is for like reason that the first judgment and order are not res adjudicata of an abandonment which will sustain the second proceeding.

Nothing in the case of People ex rel. Lichtenstein v. Hodgson, supra, requires that it should be held that abandonment is a continuing offense, in the sense that, where an abandonment becomes an element in a conviction of being a disorderly person, the person so convicted may not thereafter rehabilitate himself by the discharge of his obligations, or be entitled in a subsequent similar proceeding to the presumption of innocence. It is not the law that a man, once arrested and ordered to pay his wife support in these proceedings, has no defense on an application for a second order except payment, or that, even though his wife was the cause of the continued state of separation, a new order could be lawfully made, and so on ad infinitum, whatever his attitude, or in spite of his willingness to live with his wife.

It follows that the abandonment which, in the proceeding of 1909, in connection with other facts, produced and justified the adjudication of February 25, 1909, is not res adjudicata in this proceeding of such an abandonment as can, in the light of such presumed rehabilitation and innocence, support the present proceeding. In this second pro-

ceeding there must at least be proof of a continued refusal by the appellant to resume marital relations, as well as proof of the continued destitution of the wife.

The judgment appealed from, as will hereinafter more clearly appear, proceeded upon the erroneous theory that, so far as the element of abandonment was concerned, the present proceeding could be supported by the abandonment which occurred in 1909. This view was based upon the error that the judgment of February 25, 1909, was in the nature of res adjudicata on the subject of abandonment. It was indeed res adjudicata, but only as to the issues in that proceeding. Those involved only an abandonment as of a time prior to February 25, 1909, and not an abandonment as of a date between February 25, 1910, and April 18, 1910.

It remains to consider what was the effect upon the rights of the parties of the adjudication of February 25, 1909. Upon the rendition of the judgment and the making of the order in the proceeding of 1909, the defendant therein (the appellant here) having elected not to appeal, but to acquiesce and comply, and having complied, the rights of the parties, so far as the questions of cohabitation and support were concerned, from February 25, 1909, the date of the adjudication, to February 25, 1910, the date of the expiration of the order, were determined and measured by such adjudication. During the life of the undertaking given by the defendant in such proceeding, the defendant therein (the appellant here) was not under obligation to cohabit with his wife; and during the life of such undertaking he could not be proceeded against for not supporting her. It follows that, from February 25, 1909, the date of such adjudication, until February 25, 1910, the present appellant could not be guilty of being a disorderly person, on the ground of any supposed abandonment of the complaint between such dates.

But, after the expiration of the order made in such proceeding, namely, after February 25, 1910, the rights and obligations of the parties to the same ceased to be affected by the circumstances that such a proceeding had been brought and an adjudication had therein, and became as they would have been had no such proceeding been brought, except, as stated, that the new proceeding could not be sustained against the appellant here based upon the abandonment which had given, in connection with other facts, rise to the proceeding of 1909. On the one hand, such proceeding and the adjudication therein, and the defendant's acquiescence in and compliance with the terms of such adjudication, did not discharge him from the obligation, after the expiration of the order made in such proceeding, to support his wife according to his means; and, on the other hand, such adjudication did not absolve the complainant, after the expiration of the order made therein, from her obligations and duties toward the defendant therein (the appellant here).

Nothing in said proceeding of 1909 or its termination precluded the possibility of the appellant becoming guilty of being a disorderly person because of a second abandonment of the complainant under the circumstances mentioned in the law. It in no sense constituted a bar to a new proceeding; but a new proceeding could only be sustained

by a new complaint, and a new complaint could only be sustained by new cause of complaint, and a new cause of complaint required as one of its essential elements a new abandonment, and while under certain circumstances a continued staying away by the appellant from the complainant after the expiration of the order of February 25, 1909, to wit, after February 25, 1910, would have been evidence of a new offense, namely, a new abandonment (People ex rel. Lichtenstein v. Hodgson, supra), it was not evidence of such new abandonment under all circumstances, and was not, for the reasons to be hereinafter stated, evidence of such a new abandonment under the circumstances of this case.

Having considered the effect of the order of February 25, 1909, in connection with the doctrine of res adjudicata, and in connection with its effect upon the marital rights and obligations of the parties, it remains to consider what evidence of abandonment, if any, the magistrate had before him in the present proceeding. The first question remains, therefore, as stated: Did the appellant abandon his wife after February 25, 1910, and before April 18, 1910?

On February 25, 1910, they were living apart under legal sanction. Thereafter neither appears to have sought the other. Was it the appellant's duty to go to the complainant, or was it the complainant's duty to go to the appellant? The facts which might have thrown light upon the answer to be made to these questions were but imperfectly elicited upon the hearing. Both parties lived in the same city and nearly opposite to each other on the same avenue—the appellant at 1072 Third avenue, where he had lived for a year, and the complainant at 1157 Third avenue, to which place she moved after the appellant abandoned her in 1909. The complainant had been in communication with the appellant, and had received money from him, up to 18 days before her complaint in this proceeding. It is in evidence that, from February 25, 1910, to April 1, 1910, the appellant paid her at the rate of $6 per week. The complainant knew where and for whom and at what the appellant worked. She testified that she was afraid to live with him, and he testified that he was willing to provide a home for her.

There was no evidence that, after February 25, 1910, and when the marital obligations of cohabitation and support became again binding upon the appellant, he did not return in quest of the complainant to the place which, at the time of the abandonment of 1909, had been their mutual abode; and, if it was the appellant's duty to do so; in the absence of evidence to the contrary, in aid of the presumption of innocence, the appellant can be presumed to have done so, while if, from the testimony, the inference is permissible that at such time the defendant had knowledge that the complainant had removed from that spot, and therefore did not go there, the law will not put him in the wrong, in this quasi criminal proceeding, because of a failure to go through with what would have been but an idle ceremony. If, after the abandonment of 1909, the complainant had continued to reside in the abode in which at such time she had been living with the appellant, it might perhaps have been properly urged that, being prima facie the

only place designated by the appellant as the family abode, it was incumbent upon him to return there to her, and that an omission on his part to do so, after February 25, 1910, would have been evidence of a new abandonment. But that, as stated, was not the situation. The complainant left that place, as well as the appellant; and, so far as disclosed by the evidence, her subsequent abode at 1157 Third avenue was one selected by her without the concurrence of the appellant; and the appellant's obligation to return to the complainant was not an obligation to go in quest of her to whatsoever place she might have betaken herself.

Under these circumstances, before the complainant could successfully contend that the appellant had abandoned her, it was incumbent upon her to establish, unless she could show sufficient excuse for not doing so, that she had performed her duty in going to the appellant and offering to live with him if he provided a suitable home for her. She could not successfully contend that he had abandoned her, unless, in the alternative, she either established some sufficient excuse for not going to the appellant and offering to live with him upon condition that he provide a suitable home for her, or that she so went and so made such offer and was met with noncompliance on the appellant's part. In this proceeding, the complainant neither established an excuse for not so going, nor contended that she had so gone and done. There is, perhaps, reason to think that, had she gone and made such offer, the appellant might have been put in the wrong; but by reason of the complainant's unexplained and unexcused nonaction the appellant was not put in the wrong. A husband is not obliged to live with his wife in the place of her selection. He may choose the abode, and, unless the court can see that it is palpably unsuitable and, therefore, presumably chosen in bad faith, the wife cannot predicate a claim of abandonment upon her refusal to accept as an abode the place so selected, or upon her neglect to avail herself of it. Lutes v. Shelley, 40 Hun, 197.

In the present proceeding, it appears that, knowing or being able to learn where the appellant lived, the complainant did not go to him and offer to live with him, or ask him to live with her, and the appellant did not refuse to receive her into his abode. The complainant took it for granted that she had acquired a continuing right to live apart from the appellant, based upon the abandonment in 1909 and the adjudication of February, 1909; and this proceeding has been sustained upon the theory that that adjudication entitled her to a continuous maintenance apart from the appellant. This theory was wrong, for the reasons stated. In the absence of articles of separation, if the complainant was unwilling to live with the appellant, she was not entitled to be supported separate and apart from him, unless she sought and obtained an indorsement of her attitude in that respect from the Supreme Court, in which event she would, quite probably, have been granted an allowance.

In the case at bar, the evidence disclosed no refusal on the part of the appellant to resume the proper marital relations, but merely an omission by him to pay her money for a period of 18 days while she was, of her own volition, living apart from him. The evidence, there-

fore, established no abandonment after February 25, 1910, and before the institution of the present proceeding, and, accordingly, the judgment must be reversed.

Judgment reversed.