FRANK et al. v. CARTER.    (No. 140–60.)

(Supreme Court, Appellate Division, Third Department.    September 23, 1914.)

Appeal from St. Lawrence County Court.

Action by Julius Frank and another against Theodore Carter. From a judgment of the County Court, affirming a justice's judgment in favor of plaintiffs, defendant appeals.    Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Hermon J. Donavan, of Ogdensburg, for appellant.

John C. Tulloch, of Ogdensburg, for respondents.

PER CURIAM.    Judgment of the County Court affirmed, with costs.    All concur, except WOODWARD, J., who writes for reversal, in which HOWARD, J., concurs.

WOODWARD, J. (dissenting).    The return of the justice of the peace, on which this judgment is founded, shows that the plaintiffs orally complained of the defendant and alleged a cause of action for "goods, wares, and merchandise sold to Mrs. Theodore Carter, of the value of $54.50, no part of which is paid."    The defendant put in a general denial, denied that the purchaser was Mrs. Theodore Carter, but that she was the wife of one William Moore, and further denied liability on account of her purchase.    J. D. Butterworth, the clerk who sold the principal goods, testified that:

"On or about May 16th I sold a bill of goods to Mrs. Theodore Carter. This is the bill.    Saw Mr. Carter same day."

Stating a conversation with Mr. Carter, the defendant, the witness says:

That Mr. Carter came to the store, inquiring for Mrs. Carter, with an officer.    That Carter asked if she had bought anything, and that he was told that she had, and that he asked what it was, and was told the articles.    That Carter said he would not pay for it.    That the witness said: "You never gave us any orders not to trust your wife."    That Carter said: "Her trunk is down at the ferry dock, and she probably intends to cross over."    Carter said: "I will make her smart for this.    This is a case of bigamy."    I said, "She was married before;" and he said, "Yes; it is a case of bigamy."

On cross-examination this witness says:

"I sold her the goods about half past 11, and still it might have been past 12 when Waite and Carter came in.    She came in with her father.    They had no conversation with me, except she wanted a suit and petticoat, and I guess that is all.    The bill shows.    Had no conversation with them about charging the goods.    Had no conversation with anybody else about charging them.    I am well acquainted with Carter, and have been for a long time.    She has traded there with me before as Mrs. Carter.    Whether she paid for what she got, or had it charged, I don't remember.    Anyway she had them paid for. Mr. Howard, her father, didn't say anything about charging them."

On redirect the witness testified that the goods in question were not paid for.

Julius Frank, one of the proprietors of the store, testified that the bill was not paid, with some other incidental matters, and was sub-

sequently recalled and testified that he had some conversation with Butterworth, who went out and tried to reclaim the goods; that witness asked him if Carter was not good, and suggested that it was not worth while to trouble about it. Butterworth testified that he did go out and try to reclaim the goods.

An interlocutory decree, showing that Mary Howard Moore was incapable of entering into the marriage relation with the defendant on the 29th day of June, 1909, at which time a marriage ceremony was performed between the defendant and Mary Howard Moore, was offered and received in evidence, and a motion to dismiss the complaint on account of no liability shown was denied. The defendant then took the stand and testified as to the marriage ceremony; that he had lived with Mary Howard Moore as his wife from the date of the ceremony until the 15th day of May, and that on that night he learned that Mary Howard Moore had a husband living from whom she had never been divorced, and that on the following morning he hitched up and drove from his home in Oswegatchie to Ogdensburg, where he swore out a warrant charging his supposed wife with bigamy, and he tells of the steps taken to capture her before she had time to leave the country. Speaking of the time between the ceremony and the discovery of the bigamy he says:

"During this time I bought things for the house, and she bought things for the house. We traded some at Morristown. When I knew nothing about her not having a divorce, I made no objection to her buying things. During the three years she bought what she needed. We came lots of times to Ogdensburg. Any little thing that was needed we bought, and if I got it I paid for it, and if she wanted something she bought it. If she wanted anything she bought it. * * * All the articles that were purchased on that day from Frank's and McGruer's were for herself. She never done anything like that before without talking it over. Prior to this I don't know anything about her trading at McGruer's. * * * I don't remember getting any bill; remember getting a notice of the last bill."

This is all the material evidence in the case in so far as it relates to the bill of the Franks, and other items being an assigned claim to the plaintiffs from McGruer's. It will be seen that there is not a particle of evidence that the defendant had ever permitted his supposed wife to purchase goods on credit, not a particle of evidence that the defendant had ever known of her purchasing goods on his credit from the Franks, and the declaration of the complaint is not that the Franks had sold goods to the defendant, but that the plaintiffs complained "for goods, wares, and merchandise sold to Mrs. Theodore Carter, of the value of $54.50, no part of which is paid," and the evidence is that the plaintiffs did sell "a bill of goods to Mrs. Theodore Carter."

The evidence in this case shows conclusively that at the time of this alleged transaction the "woman in the case" was the lawful wife of one William Moore, and if there was any obligation growing out of the marital relation to pay for these goods that obligation rested, not upon the defendant, but upon William Moore, though it is probably true that the latter was absolved from such responsibility by reason of the misconduct of the wife, with whom he was not living at the

time. Wanamaker v. Weaver, 176 N. Y. 75, 78, 68 N. E. 135, 65 L. R. A. 529, 98 Am. St. Rep. 621, and authority there cited; Constable v. Rosener, 82 App. Div. 155, 81 N. Y. Supp. 376. Of course, if the defendant had been in the habit of permitting the woman to trade on his account with the Franks, and of paying the bills thus contracted, it.might well be that he would be held to be liable for her bills until he had given notice, on the ground and under the rule that,·where one of two innocent parties must suffer, he is to be held responsible who has placed it in the power of an agent to inflict the injury; but here there is no such situation. No evidence whatever is to be found ·in the case that the Franks had ever sold this woman any goods upon the credit of her supposed husband, or that he had ever ratified or paid any such bills.

Section 55 of the Domestic Relations Law declares that a "contract made by a married woman does not bind her husband or his property," and the only evidence in this case is that the plaintiffs sold goods to Mrs. Theodore Carter, without any suggestion on her part that they were to be charged to the defendant. Being competent to contract, the presumption must be that the goods were sold upon her own credit, for they were not of the character of goods to come within the description of necessaries, in the sense that the ·law uses that term in charging a husband. The fact that this woman had committed a crime, and had thus placed herself in a position to commit this fraud upon the plaintiffs, does not operate to charge the defendant, unless he has held her out as entitled to credit on his account for articles for her own personal use, and the case does not show such a situation. The defendant testifies that he did not object to her buying things; that both of them bought things, and that when he bought things he paid for them; but no one testifies that the woman ever bought anything which she did not pay for, with the exception of the particular goods for which the plaintiffs seek to recover, and the plaintiffs' own testimony that Butterworth went out and tried to reclaim the goods is some evidence that the goods were sold to the woman, without any reference to the defendant's credit, and that the idea of charging them to the latter was developed after it was found that the goods were gone beyond recall. In Wanamaker v. Weaver, 176 N. Y. 75, 68 N. E. 135, 65 L. R. A. 529, 98 Am. St. Rep. 621, it was held that:

A "husband living with his wife, who supplies her with necessaries suitable to her position and his own, or furnishes her with ready money with which to pay cash therefor, is not liable for the purchase price of other goods sold to her, of the same character as necessaries, in the absence of affirmative proof of his prior authority or subsequent sanction; the question of the wife's agency being one of fact, and not a conclusion of law to be drawn alone from the marital relation."

Here it affirmatively appears that during the three years that the woman lived in her criminal relations with the defendant "she bought what she needed; * * * any little thing that was needed we bought, and if I got it I paid for it, and if she wanted something she bought it," so that there does not appear to have been any holding out of this woman as being entitled to credit on the account of her

husband for so-called necessaries, and there is no evidence in this case to charge the defendant with these goods.

There is an attempt, in respect to the assigned claim, to show that there was a holding out of the woman as entitled to credit; that some time in 1910 or 1911 she purchased some wall paper at the same place; but it does not appear that the defendant paid this bill. In reference to the present transaction he says:

That he does not know Carter, but that he knew Mrs. Carter; that "she came to the store and had a conversation with me at that time. She asked me if she could get some more goods, and that the previous bill was paid up, and would like to get some more goods. I referred to the books, and saw the old bill was paid, and said she could have them. The price was $21, and no part of it has been paid."

Clearly there is no foundation here for claiming that the defendant had held her out as his agent; the merchant did not know Carter, and the woman came there and said she wanted goods, and he looked over the books and found that goods previously sold to her had been paid for, and he told her she could have the goods. To charge the defendant for these goods is to go beyond the law.

The judgment appealed from should be reversed.

HOWARD, J., concurs.