CITY OF NEW YORK, Respondent, *v.* CHARLES McCARTHY, Appellant.

Court of Special Sessions, City of New York, Appellate Part, First Judicial Department, March 30, 1931.

*Murray & Meyers*, for the appellant.

*Arthur J. W. Hilly, Corporation Counsel* [*Arthur H. Kerns* and *J. Joseph Lilly* of counsel], for the respondent.

SALOMON, J.  An order was made herein adjudging the defendant a disorderly person and directing him to pay eight dollars per week for the support of his wife.

Under the provisions of section 74 of the Inferior Criminal Courts Act (Laws of 1910, chap. 659, as amd. by Laws of 1919, chap. 339) a husband who fails to support his wife and there is danger that she may become a public charge is to be adjudged a disorderly person.

The testimony adduced before the magistrate in this case justified him in concluding that the complainant was incapacitated, unable to support herself and in danger of becoming a public charge.

It appears that the parties hereto have lived separate and apart for approximately twenty-five years and that several applications have been made to the Supreme Court by her for alimony, which

applications have been denied. Even though the parties hereto have lived separate and apart and the applications made to the Supreme Court were denied, nevertheless the defendant is the lawful husband of the complainant, and where it appears from credible testimony that the complainant, the wife of the defendant, is incapacitated and unable to support herself and that the defendant, her husband, neglects and fails to contribute towards her support, and she, therefore, is in danger of becoming a public charge, the defendant is legally bound under the law to support her at least to the extent of preventing her from becoming a burden upon the public.

The judgment herein adjudging the defendant a disorderly person and directing him to pay eight dollars per week towards support of the complainant is, therefore, affirmed.

HEALY, J., concurs.

FRESCHI, J. (dissenting). This is an appeal from an order of the Family Court adjudging the appellant a disorderly person and directing the payment by him of a weekly allowance for the benefit of his wife who, due to her broken health, is likely to become a public charge.

These parties intermarried thirty-three years ago and for the past twenty-five years husband and wife have lived apart, the complaining witness having deserted her husband. From time to time during that period she has had recourse to the City Magistrates' Court for support without success, and also applied for alimony in a separation action in the Supreme Court where her prayer was denied because she failed to justify the abandonment of her husband. She has, however, supported herself, until she took sick and became physically incapacitated.

The appellant now contends that such abandonment without just cause constitutes a defense to this proceeding and that he cannot legally be adjudged a disorderly person under these circumstances.

These summary proceedings are instituted by the city of New York for its own relief and for the public indemnity (*People ex rel. Commissioner of Charities* v. *Duffin*, 68 Misc. 290, 292; *People ex rel. Kehlbeck* v. *Walsh*, 11 Hun, 292, 294); and the authority therefor is found in section 899, subdivision 1, of the Code of Criminal Procedure and section 74 of the Inferior Criminal Courts Act (Laws of 1910, chap. 659, as amd. by Laws of 1919, chap. 339). Section 899, subdivision 1, of the Code, so far as applicable here, provides: " The following are disorderly persons: 1. Persons who *actually abandon* their wives or children, without adequate support,

or *leave* them in danger of becoming a burden upon the public, or who neglect to provide for them according to their means." Section 74 of the Inferior Criminal Courts Act corresponds and is similar to the Criminal Code provisions *supra*. (*City of New York* v. *Kaiser*, 125 Misc. 637.) These proceedings under said statutes are criminal in their nature and, therefore, a strict construction is imperative. (*People ex rel. Feeney* v. *Dershem*, 78 App. Div. 626; *People* v. *Smith*, 139 id. 361, 363; *People* v. *Meyer*, 124 Misc. 285; *People ex rel. Burke* v. *Fox*, 205 N. Y. 490, 495; *People* v. *Pettit*, 74 id. 320, 324; *People ex rel. Commissioners, etc.*, v. *Cullen*, 153 id. 629, 635.) A wife who leaves her husband without adequate excuse cannot escape the consequences of her desertion. As a general proposition, the deprivation of support naturally follows such desertion, and the law gives no protection to the " revolted wife," who, notwithstanding that she owed her husband a duty, " strayed amiss." The husband, under such circumstances, cannot be required any longer to " guard her and with her the worst endure."

This wife sought a limited divorce on statutory grounds, but after her application for alimony and counsel fee was denied, the suit for a judicial separation was abandoned; and, so far as we know, the case was never prosecuted to judgment. Where the wife actually leaves the domicile of the husband voluntarily and willfully and without good reason, she practically renounces her rights, and the husband cannot be compelled to maintain her. (*Constable* v. *Rosener*, 82 App. Div. 155; *Reischfield* v. *Reischfield*, 100 Misc. 561; *Wirth* v. *Wirth*, 184 App. Div. 643.)

But only where the amount, as here, is granted simply to prevent absolute poverty and the wife from becoming a public burden, must the interests of the public and the taxpayers be considered as superior and controlling so as to avoid a charge being made upon the public purse. (See *People* v. *Smith*, 139 App. Div. 361, 363.) In *People ex rel. Commissioner of Public Charities* v. *Wexler* (152 App. Div. 67, 69) the court said: " The purpose of the statute is not to adjust matrimonial differences, but to furnish a means of relieving the city from the burden of supporting an abandoned wife or children and of placing the burden where it rightfully belongs * * *. As said in *People ex rel. Feeney* v. *Dershem* (*supra*), the statute was ' designed to prevent her from becoming a charge upon the public purse.' It applies not only to one who ' abandons ' but equally to one who ' leaves ' his wife in danger of becoming a public charge." The court in the latter case also referred to *People* v. *Crouse* (86 App. Div. 352), and, speaking of that case, said: " There, it seems to me the main purpose of the statute was

overlooked, viz., the public interest." And in *People* v. *Meyer* (12 Misc. 613, 614) the court said: "The matter of interest for the taxpayers of this city is that they should not be called upon to pay the legal obligation of the husband." The marriage in the case at bar is still in existence and valid; and when the rights of the public are concerned, we must look to the obligation of the husband which is moral as well as legal. (*People ex rel. Heinle* v. *Heinle*, 115 Misc. 469.)

I cannot agree with my learned colleagues in their affirmance of the order appealed from, inasmuch as it is not established here that the defendant actually *left* the complainant in danger of becoming a burden upon the public. The words of the statute under consideration are "actually abandon * * * or leave them [wife and children] in danger of becoming a burden upon the public." This presupposes a willful abandonment and neglect to make provision within his means after actual knowledge on the part of the defendant of the disability and destitution of his wife. I do not understand how this defendant could be held to have intentionally left his wife, within the meaning of "leave," which is the word in the statute, when he had no knowledge of her physical and financial condition; nor did he have any means of ascertaining such facts. It seems to me but fair, to say the least, that before an adjudication can be made, there must be proof of notice and a demand. Yet the defendant is summoned into court, charged with a violation of section 74 of the Inferior Criminal Courts Act (Laws of 1910, chap. 659, as amd. by Laws of 1919, chap. 339), and, after a summary trial, held to be a disorderly person and ordered to make payments or stand committed to the workhouse in default of a bond to that end. While this statute is not in fact a Poor Law it is in effect such, in order to prevent poverty and for the common welfare; and cases such as these deal with *conditions* rather than with specific criminal acts (*People* v. *O'Neill*, 117 App. Div. 826); hence knowledge thereof must be brought home to defendant's notice. He had no way of knowing these conditions, since there was no duty to support his wife after her abandonment, without cause, of his domicile. (See *People ex rel. Heinle* v. *Heinle*, 115 Misc. 469.) According to this record, no demand was ever made upon the defendant; he was given no notice that his wife was liable to become a public charge; his wife had not communicated with him in any way; and he had made no refusal. Assuming for the purposes of this point, that the husband has an imperative duty to perform here under the circumstances of this case, I am of the opinion that a demand is a condition precedent before he can be found guilty of or adjudged to be a disorderly person.

In *People* v. *Houtman* (197 App. Div. 84) the order and proceedings in the Domestic Relations Court were reversed and dismissed. There the husband and wife were separated by agreement under which the former provided support for his wife. Although the amount stipulated had been paid for some time, the wife claimed that the said defendant had failed to provide adequately for her and her child. She desired an additional allowance and her husband was ordered to pay the extra allowance and adjudged a disorderly person. GREENBAUM, J., writing for the court, said: " The defendant's attorney in his brief practically concedes the propriety of increasing the amount of the wife's allowance, but he urges that the stigma of the defendant being a ' disorderly person ' should be removed by a reversal." Continuing, the court added: " We think that under the facts here appearing the defendant's attention should have been directed before coming into court to the plaintiff's claim of a changed situation which justified an additional allowance for herself and her child so as to enable him either to comply with or refuse her request and afford him an opportunity to defend himself against the charge of being a disorderly person."

The principle of the last case is applicable here. I recognize that the purpose of the statutes above referred to is " to protect the public from such a charge, rather than to adjust domestic relations." (*People* v. *Crouse*, 86 App. Div. 352, 355.)

In fact, if we examine the indemnity bonds in all cases like this, provision is to be found therein that the defendant covenants to indemnify the county by reason of *his conduct that has created the danger of his wife becoming a burden upon the public*. The whole theory of the statutes under consideration and the policy of the law is to guard against alimony dodgers, deserters and negligent husbands who fail to provide for their wives. How can a man who has never failed to perform his duty up to the time of the desertion by his wife, be held criminally responsible and incarcerated if he fails to provide and execute such an indemnity bond, by the very recitals of which he has failed to perform his duty when, in truth, the wife never has been an abandoned and unsupported spouse.

I feel it my duty, as I understand the law, to vote for the reversal of the order appealed from and to grant the defendant a new trial.