## Fourth Department, July, 1941.
### (July 2, 1941.)

Irene C. Maloney, Appellant, v. William J. Maloney, Respondent.

Appeal by the plaintiff from a judgment of the Supreme Court, entered in the Monroe county clerk's office on October 5, 1940.

Judgment affirmed, without costs.

All concur, except Dowling and Harris, JJ., who dissent in a memorandum and vote for reversal on the law and facts and for a new trial, to enable the defendant, if he so desires, to contest the charge of cruel and inhuman treatment. (The judgment dismisses plaintiff's complaint on the merits in a separation action.) Present — Crosby, P. J., Taylor, Dowling, Harris and McCurn, JJ.

(Dissenting memorandum): The plaintiff and the defendant were married at Mount Vernon, N. Y., on September 14, 1918. Following their marriage, they made their home in Rochester, N. Y., where they have since resided. The plaintiff had previously married one Perry J. MacCord at Harrisburg, Pa., on February 8, 1901. The MacCords lived together in Pennsylvania following their marriage, for several months and established there a matrimonial domicile. She had procured a divorce from MacCord in Pennsylvania in June, 1913. The fact of that divorce was made known to the defendant by the plaintiff before they were married. The plaintiff also had her marriage annulled in the Catholic church prior to September 14, 1918. Unhappy differences arose between these parties which culminated in the commencement of this action for a separation. The plaintiff alleged in her complaint that she and the defendant were legally married in New York State and that the defendant was guilty of cruel and inhuman treatment which rendered it unsafe for her to longer live with him. The defendant denied the validity of the marriage and the charge of cruel and inhuman treatment but he asked for no affirmative relief. The defendant has recovered a judgment dismissing the plaintiff's complaint on the ground of the invalidity of the Pennsylvania divorce decree and the plaintiff has appealed. The court found that that decree was the product of false swearing and that the court which granted it lacked jurisdiction of the parties and of the subject-matter of that action. The validity of that decree has never been challenged by the parties to it and it still stands unrevoked and valid upon the records of the court which granted it. Whether there was false swearing in the procurement of that decree or whether the venue was laid in the proper county is no direct concern of our courts. The courts of Pennsylvania have both the power and the jurisdiction to deal with those questions. Action on the part of our courts in respect to such questions is not indicated. (*Hubbard* v. *Hubbard*, 228 N. Y. 81.) We think that the Pennsylvania court acquired and assumed jurisdiction of the parties and the subject-matter of that action. The evidence is to the effect that the plaintiff was a resident of Pennsylvania when she began her action there. We think also that MacCord appeared in the divorce action. At the instance of the plaintiff and her attorney he visited her attorney at Lancaster to be served with the papers in the divorce action. MacCord apparently desired to give the court jurisdiction of his person so that the action would result in a valid decree of divorce. MacCord raised no objection

to the venue being laid in Lancaster county. Plaintiff's attorney informed him that he was too late for personal service since service upon him by publication had already been commenced. We regard MacCord's efforts to be served as tantamount to a personal appearance in that action sufficient to give the court jurisdiction of his person and of the subject-matter of that action. Plaintiff's attorney later became the master in the divorce action and of course he was aware of MacCord's appearance and his knowledge, in a sense, was the knowledge of the court.

We think that the courts of Pennsylvania acquired and still have jurisdiction of the matrimonial res so far as the MacCord marriage and divorce are concerned. The evidence indicates that the plaintiff is old and without funds and that she is likely to become a public charge if the defendant is permitted to escape from his obligation to support her. There is nothing in our public policy or sense of morality which should compel our courts to pass upon the validity of the Pennsylvania divorce or to declare it void thereby making the plaintiff a social outcast and a public burden. Sound morality and comity, on the contrary, require that this court should preserve the marriage status so long existing between the plaintiff and the defendant. (*Heller* v. *Heller*, '285 N. Y. 572.) The facts are such that we could and should apply against the defendant, if necessary, the principle of estoppel in order to save the plaintiff from becoming a public charge. (*Krause* v. *Krause*, 282 N. Y. 355, 360.) The judgment should be reversed on the law and the facts and a new trial should be granted to enable the defendant, if he so desires, to contest the charge of cruel and inhuman treatment.