SADIE ROSENBERG, Also Known as SADIE PERLES, Plaintiff, *v.* WILLIAM PERLES, Defendant.

Supreme Court, Special Term, Kings County, June 23, 1944.

*Julius Applebaum* for plaintiff.

*Grossman & Perles* for defendant.

F. E. JOHNSON, J. The plaintiff seeks a declaratory judgment that her marriage to the defendant was void on the ground that at the time of the marriage she had a husband then living. The defendant counterclaims for similar relief. It is evident that both parties want an annulment and the only question is whether or not it is legally possible to grant either any relief.

The facts are that in 1921 the plaintiff married her now deceased first husband; they separated in 1932 and five years later entered into a separation agreement; shortly thereafter she went to Nevada to obtain a decree of divorce; six weeks after her arrival she began her action there, suing him for divorce on the ground that they had been living apart for more than five consecutive years; he appeared by attorney and did not contest, and upon her evidence a decree was given her on the same day that the suit was begun; the next day she left the State, returned to Brooklyn, which was her residence at the time she started for Reno, and has since then continuously resided here. Her first husband died thereafter; three years before his death and a few weeks after the divorce, she married the defendant in this city; they lived together for about six months and separated in September, 1938.

There was some corroboration by her daughter of the facts upon which plaintiff now claims that her decree in Nevada was void because the court never had jurisdiction of her, and that her pretended domicile there was a fraud, and that she never was a resident of that State.

It is necessary to the validity of a decree, even if rendered upon the appearance of the defendant, that the *plaintiff* shall

have been actually domiciled in Nevada (*Baker* v. *Baker,* 179 Misc. 1023); if the proof submitted in that jurisdiction did not establish her real domicile, but only an apparent one, there was not jurisdiction of the *plaintiff* or the cause of action (*Reese* v. *Reese,* 179 Misc. 665); the *plaintiff* in the foreign State must be genuinely domiciled there for the court there to have jurisdiction (*Meyers* v. *Meyers,* 179 Misc. 680).

Whether the facts necessary to be established to give that court jurisdiction were omitted through accident or design, or whether statements contrary to the truth were made, as a fraud upon that court, may not be important, since the net result is that the court did not have jurisdiction for lack of such facts as establish plaintiff's domicile.

A careful search of the authorities does not reveal any suit, by one who had obtained a divorce decree in a foreign jurisdiction, to set it aside because that party had procured it by fraud or concealment of facts, or by reason of there being no jurisdiction of the plaintiff who procured it. In *Guggenheim* v. *Wahl* (203 N. Y. 390) the court held that the attack is to be made in the court wherein the decree was granted. This plaintiff is now making a collateral attack on the judgment she procured, but there seems to be no authority permitting that.

There seems to be an established public policy, not only in this State but generally, that one may not, at least collaterally, attack a decree that one has obtained; the authorities may not distinguish between decrees obtained by fraud and those obtained by innocent mistake of fact concerning domicile.

The Appellate Division unanimously decided in *Frost* v. *Frost* (260 App. Div. 694) that the ex-husband could not collaterally attack a Nevada decree that he had, in effect, consented to when he appeared in that court and allowed his wife to take judgment by default. In *Krause* v. *Krause* (282 N. Y. 355) a party who sought in this court to avoid the decree he had obtained in a foreign jurisdiction, was barred from doing so, on the ground that one " may not be heard to assert * * * that the judgment of divorce which he sought and obtained failed in its purpose and thereby did not give [him] * * * that freedom to remarry which he appeared to possess by virtue of that judgment."

There is no later decision indicating that this flat statement of the law is not still in effect. In the *Goldstein* v. *Goldstein* case (283 N. Y. 146, 156), Conway, J., cites the *Krause* case (*supra*) as holding that the present husband "·will not be permitted to deny that she is his wife, since *he* sought and obtained "

the foreign decree which he seeks to attack collaterally. In the *Oldham* v. *Oldham* case (174 Misc. 22), McLAUGHLIN, J., cites the *Krause* case as estopping a party who obtained a decree from attacking it. In *Querze* v. *Querze* (176 Misc. 446), VALENTE, J., says the *Krause* rule is that one obtaining a void decree of divorce is " barred from setting up such defense ". In the " *Standish* " v. " *Standish* " case (179 Misc. 568), SICHER, J., says the *Krause* case holds that one who obtains a decree " will not be heard to impeach that judgment collaterally in another forum ".

One " who submits himself to the jurisdiction of the court and by conduct or in words asks for the rendition of a judgment either for or against him, cannot thereafter be heard in a collateral action or proceeding to question the jurisdiction of the court or to urge that the judgment so obtained is a nullity. (*Starbuck* v. *Starbuck*, 173 N. Y. 503, 506; *Krause* v. *Krause*, 282 N. Y. 355; *Assets Realization Co.* v. *Roth*, 226 N. Y. 370; *State National Bank* v. *Northwestern Union Packet Co.*, 35 Iowa 226; *Bell* v. *Little*, 204 App. Div. 235, [affd.] 237 N. Y. 519; *Brown* v. *Brown*, 242 App. Div. 33, affd. 266 N. Y. 532; *Hynes* v. *Title Guarantee and Trust Co.*, 273 N. Y. 612.) " (Dissenting opinion by CONWAY, J. [RIPPEY and LEWIS, JJ., concurring] in *Matter of Holmes*, 291 N. Y. 283.)

In *Cross* v. *Cross* (177 Misc. 347), LAPHAM, J., says that the *Krause* decision is " a departure ", and holds that one may " not be heard to say that a foreign decree of divorce *which he sought and obtained* did not accomplish the results that it purported to achieve."

In *Maloney* v. *Maloney* (22 N. Y. S. 2d 334, 344) it was said that in the *Krause* decision " the rule refusing recognition to equitable doctrines in relation to marital cases has been relaxed " but that nevertheless the defendant " would not be heard " to attack the foreign decree he had obtained. The dissent in the Appellate Division (262 App. Div. 936) did not challenge this interpretation of the *Krause* ruling, and the affirmance in the Court of Appeals was without opinion (288 N. Y. 532).

In *Hunter* v. *Hunter* (24 N. Y. S. 2d 76), McGAREY, J., uses similar language in construing the *Krause* decision, and in repeating this interpretation DEYO, J., in *Johnson* v. *Johnson* (26 N. Y. S. 2d 942) cited *Van Dover* v. *Van Dover* (247 App. Div. 813); there our Appellate Division, following the *Brown* (242 App. Div. 33, *supra*) and *Starbuck* (173 N.Y. 503, *supra*) cases, somewhat anticipated *Krause* v. *Krause*, and refused to hear a party attack the foreign decree he had obtained.

The Court of Appeals in the *Matter of Lindgren* (293 N. Y. 18) repeated the *Krause* ruling, saying that neither of the parties who had appeared in the foreign court could attack the decree here (citing Restatement, Judgments, § 19, and Restatement, Conflict of Laws, § 112).

It may be that this estoppel is merely an aspect of the familiar principle that one who has entered judgment on his own application is forbidden to appeal from the relief that he has thus been given (*Cleary* v. *Douglas-Guardian Warehouse Corp.,* 253 App. Div. 790, citing *Hooper* v. *Beecher,* 109 N. Y. 609; *Raymond* v. *Tiffany,* 115 App. Div. 350; *Matter of Gier,* 243 App. Div. 560; *Munson Realty Co.* v. *Melrose Bond & Mortgage Corp,* 232 App. Div. 832; 6 Carmody on New York Pleading and Practice, § 47, p. 54; 3 C. J., Appeal and Error, § 546, p. 671).

The *Krause* decision has been cited and discussed in many other cases without a hint that it is not now the settled law of this State. It is true that the plaintiff here does not seek relief further than to ask for a declaration of her *status,* in an action brought for a declaratory judgment, but since it is against public policy to allow her to now plead here what in effect is her fraud upon the Nevada court, and seek to be relieved of it, not by that court but by a court of this State, our Supreme Court should refuse to entertain jurisdiction as to her claim or her prayer, under section 473 of the Civil Practice Act and rule 212 of the Rules of Civil Practice. Upon the foregoing grounds jurisdiction is refused.

The defendant may be standing in a different position when he asks for a judgment declaratory of his status.

It may not be easy to detect in the mass of decisions of our courts any special consistency in dealing with the question of estoppel to seek relief from a foreign decree, but the confusion is most evident in cases where relief is sought by the second husband.

Unfortunately the question has not been directly settled by the Court of Appeals and it is not simple to attempt to state what the law is, further than to cite apparent illustrations of application of the supposed rule.

In *Davis* v. *Davis* (279 N. Y. 657 [1938]) the second husband sued to annul his marriage to defendant on the ground that she had never been legally divorced from her first husband; apparently she had obtained the ordinary foreign decree, rendered without jurisdiction of her then husband. The only real question may have been if her second husband could raise the issue of her invalid decree. He was making a collateral attack upon

a decree to which he was not a party, rendered in an action to which he was a complete stranger.

In principle his position was the one condemned in *Sorenson* v. *Sorenson* (219 App. Div. 344 [1927]) where our Appellate Division, following certain Court of Appeals decisions, dismissed the cause of action by a second husband who had sought to show that his marriage to the defendant took place while she had a husband living because her foreign decree was void.

It may be that because common law marriages were then legal in New York, Sorenson went further than to show a bigamous marriage; he attacked a later foreign decree, which after his marriage to her, had dissolved her previous marriage. At the time they married she had not yet been divorced from her first husband, but she showed that later, while Sorenson and she were living together as husband and wife, that prior marriage had been dissolved by decree of a foreign court, of apparently competent jurisdiction, whereby she was duly divorced. The Sorensons continued thereafter to hold themselves out to the world as husband and wife; thus she might have a matrimonial status thereafter, from the common-law standpoint, even if she did not acquire one by the marriage ceremony performed at a time when she was not eligible to remarry. The important point about the *Sorenson* decision is that he was forbidden to attack that foreign decree.

The authorities cited by KAPPER, J. (MANNING, YOUNG, LAZANSKY and KELLY, JJ., concurring) included *Kinnier* v. *Kinnier* (45 N. Y. 535), holding that the plaintiff husband who sued to annul his marriage on the ground that " a divorce obtained by [defendant] from her former husband was void for fraud practiced in obtaining it," could not bring such a suit, because he. " has not been defrauded nor is he injured by it," and although her previous, foreign decree was subject to avoidance upon a showing of fraud, and conceding the fraud in that decree, " he cannot avail himself of it." To the same effect *Ruger* v. *Heckel et al.* (85 N. Y. 483), *Hall* v. *Hall* (139 App. Div. 120) and *Rupp* v. *Rupp* (156 App. Div. 389) were cited in the opinion.

In his Special Term opinion in *Davis* v. *Davis* (N.Y.L.J., June 12, 1937, col. 4), COTILLO, J., did not cite authorities on the right of the plaintiff to collaterally attack the decree but discussed only the effects of certain acts of Davis, as creating an estoppel. Davis was allowed to annul his marriage to the defendant by showing that the decree she had obtained from her first husband was invalid for jurisdictional reasons. The

wife appealed, but in her brief in the Court of Appeals she cited only the Special Term *Sorenson* decision (122 Misc. 196 [1924]) where DIKE, J., did not cite any of the foregoing Court. of Appeals cases. She insisted that the Court of Appeals should follow authorities like *Hubbard* v. *Hubbard* (228 N. Y. 81), and refuse to permit Davis to invoke, as a " doctrine of public policy," the attitude of our courts towards decrees rendered without appearance of, or service upon, the first husband.

In Davis' brief in that court, the Special Term *Sorenson* decision alone is discussed, and an attempt made to distinguish it; he pointed out that " there was plenty of evidence to establish a common-law marriage between " the Sorensons " after the Danish decree became final." Throughout *Davis* v. *Davis* (*supra*) no one questioned his right to bring the suit, except on one ground, namely, that he was guilty of conduct which should estop him from suing. That conduct was held at Special Term, in the Appellate Division, and in the Court of Appeals, to be insufficient for an estoppel. The grounds of that estoppel have no relevancy here, since they relate to his alleged knowledge of her exact legal status when he married her.

Common sense and every equitable consideration would seem to warrant such an estoppel, but the contrary was thus held uniformly by a unanimous court; the Court of Appeals affirmed without opinion. The implications of that result ought to be that the *Sorenson* case is not now the law. Likewise *Hall* v. *Hall* (139 App. Div. 120 [1910], *supra*), holding that the second husband " can only impeach [the foreign decree] for *fraud* when it injuriously affects him," and *Rupp* v. *Rupp* (156 App. Div. 389 [1913], *supra*; following *Kinnier* v. *Kinnier, supra,* and *Ruger* v. *Heckel, supra*), which holds that the foreign decree " cannot be attacked collaterally in this State even though it was collusive," must likewise be regarded as silently overruled by the *Davis* decision.

*Davis* v. *Davis* (*supra*) has been discussed by other courts and there seems to be no disagreement as to its meaning. In *Mintz* v. *Mintz* (34 N. Y. S. 2d 243), HOOLEY, J., held that the foreign decree was obtained by " a fraud upon the Courts of that State," and is " not res adjudicata as to the defendant in this action inasmuch as she was not a party to " the action wherein the foreign decree was granted, and said (citing *Davis* v. *Davis*) that " it is now established that a foreign decree has no effect upon the right of either party to a full adjudication in a marital action of their matrimonial status ". (Undoubtedly, the court was speaking of " either party " to the *Mintz* case

then being decided.)   In the *Oldham case* (174 Misc. 22, *supra*) it was said that Davis " had nothing at all to do with obtaining the " Nevada " decree of divorce " and on that ground was entitled to judgment, but that Oldham could not use the *Davis* case because " It was solely as the result of his efforts that the plaintiff was enabled to enter the United States, and it was his money that supplied her expenses here and paid the legal fees for obtaining a Nevada decree. . Under those circumstances, he was a direct party in obtaining the invalid decree."

In the *Maloney* case (22 N. Y. S. 2d 334, 343, *supra*) *Davis* v. *Davis* was cited as deciding that to protect the State's interest in the fundamental relationship of marriage our courts have adopted the rigorous rule in respect to the invalidity of a foreign decree obtained against a resident of New York State, and that " In the interests of this public policy, the courts have been prepared to let individuals suffer the hardships which a strict adherence to the rule sometimes compels."

There seems to be no decision which denies it to be the right interpretation of *Davis* v. *Davis* (*supra*) that pursuant to the requirements of this public policy strict adherence to law and fact is required of those who seek to end a marriage between New York residents by suing in a foreign court; that if the plaintiff does not give the foreign court actual jurisdiction over her, and actual jurisdiction over the defendant, the decree may be attacked on either ground in this State by anyone who was not a party to it, or was not so in privity with the plaintiff as to be, in effect, a party thereto.

The substance of the *Davis* rule (*supra*) seems to have been the basis of the earlier decision in *Fischer* v. *Fischer* (254 N. Y. 463), where the plaintiff, who was then Mrs. Dolinsky, while domiciled in and a resident of New York, went to Nevada, intending immediately upon obtaining a decree to come back. here; therefore, said the court, she never became a resident of Nevada but " temporarily lived there merely to give some appearance of colorable right to maintain her action "; Dolinsky was " personally served at New York but he did not appear nor was he represented by counsel." Upon obtaining her decree she came back to New York and, during Dolinsky's lifetime, married Fischer, also a New York resident; after three months she sued him for separation, obtained a decree and her judgment was affirmed below.

The Court of Appeals granted Fischer the right to appeal, reversed both lower courts, and gave judgment for Fischer; his defense was that, contrary to her allegations, plaintiff was

*not* married to him, because of the foregoing facts; this showing " puts her to her proof to show that (her) allegation is correct ", because in every such action " the primary fact to be proved is an existing marriage between the parties. (*Jones* v. *Jones,* 108 N. Y. 415.) " Mrs. Fischer having submitted her Nevada decree with the claim of jurisdiction " of the persons of the parties," and that allegation of jurisdiction having " been disproved," the marriage " which she asserted as existing between herself and defendant is not such a one as is recognized by the law of this State." Thereupon, upon these facts, showing that she never obtained a valid Nevada decree from Dolinsky, and so was not legally married to Fischer, her case was dismissed.

If it could be said, as does not seem plausible, that the comment in the opinion in *Sorenson* v. *Sorenson* (*supra*) about Mrs. Sorenson's appearance in the foreign court, was important to the decision, here is a case where the Court of Appeals, because of the service in New York of the foreign suit papers upon Dolinsky, has recognized that he was before the Nevada court, but because of the absence of the vital facts concerning jurisdiction of *Mrs. Dolinsky,* the Court of Appeals allowed Fischer to show that situation to his own benefit. Fischer did not go as far as Davis did because he merely put in a defense and " does not come into court with demand for affirmative relief " (p. 466).

It has even been held, under the *Davis* ruling, that a second husband whose share in facilitating the foreign divorce was quite real (*Honig* v. *Honig,* 181 Misc. 251) may still escape the responsibilities of the second marriage by exposing the foreign court's lack of true jurisdiction over the wife, when she obtained a decree against her first husband. (Judgment for wife reversed and judgment rendered for second husband [267 App. Div. 908].)

It might plausibly be said that our public policy ought to be that one who marries a woman when he knows her foreign decree is worthless here, as Fischer, Davis and Honig did, ought not to be allowed to seek the aid of the courts in getting himself out of the situation into which he deliberately entered. Those who know of a known danger, and brave it, are accused of contributory negligence if they are injured, but apparently our courts are open to those who, knowing all about the invalidity of the foreign decree, marry and then change their minds; they are allowed to dissolve the second marriage for reasons which they knew all about before they entered into it.

A judgment for the relief demanded by the defendant will be signed.