WILLIAM G. HOLLOWAY, JR., Plaintiff, *v.* MARIE T. HOLLOWAY, Defendant.

Supreme Court, Special Term, Sullivan County, August 26, 1946.

*Abraham Barnett* for plaintiff.

*Martin Rosenblum* for defendant.

BOOKSTEIN, J. Plaintiff and defendant were married in New York City on January 15, 1944. One child, born November 8, 1944, is the sole issue of the marriage.

Defendant previously married one Albert McC. Barnes, III, in New York City on June 8, 1940, and they lived there during the period of their married life.

In the fall of 1943, defendant went to Reno, Nevada, for the express purpose of instituting in that State an action for divorce against her then husband. Subsequently, she instituted such an action and her then husband appeared therein by attorney.

A Nevada decree of divorce was obtained by her on January 11, 1944, and on January 15, 1944, she and this plaintiff married, defendant's first husband being then living. Thereafter and in May, 1944, defendant's first husband was killed in a plane crash.

Plaintiff also entered the military service and was discharged on October 5, 1945.

He now sues defendant for an annulment of their marriage on the ground that the marriage was void, for the reason that defendant had a prior husband living at the time of such marriage. That claim is based upon the contention that the decree of divorce granted to defendant against her first husband was a nullity, since defendant was not a bona fide resident of Nevada, when she obtained her decree and that, hence, the courts of Nevada had no jurisdiction of the subject matter.

The proof in the case is abundant that at the time of the Nevada decree of divorce, neither defendant nor her first husband were bona fide residents of Nevada for the period required to confer jurisdiction upon the courts of Nevada to grant a decree of divorce. On the contrary, the evidence is clear that both defendant and her first husband were actually residents of the State of New York at the time when the Nevada action was instituted and when the judgment of divorce therein was granted. The evidence is equally clear that defendant went to Reno, by prearrangement with her first husband, for the express purpose of establishing a pretended rather than a real residence in Nevada for the period required by the laws of that State, to confer jurisdiction upon its courts to entertain an action for divorce. In other words, defendant's alleged residence in the State of Nevada was merely a temporary residence for the sole purpose of giving her a colorable right to maintain the suit intended to be brought by her in the State of Nevada against her first husband.

Plaintiff contends that under such circumstances he can attack the validity of the Nevada divorce decree collaterally in the courts of this State and obtain a declaration of its nullity, which of course, would result in a decree of annulment in this action.

While defendant has appeared in this action by attorney and interposed an answer, the action has in reality gone undefended. In fact, most of the proof to sustain plaintiff's alleged cause of action has been supplied by defendant who was called as a witness for the plaintiff.

Plaintiff's brief does not contain a single decision of the Court of Appeals of this State precisely in point, in support of his contention.

In *Lefferts* v. *Lefferts* (263 N. Y. 131) the Court of Appeals, at the instance of the second husband, declared void a Nevada decree of divorce procured by the wife against the first husband on the ground that the wife was not a bona fide resident of Nevada when she obtained such decree. But in that case the

first husband did not appear in the Nevada action and was not served personally with process in the State of Nevada.

In *Matter of Lindgren* (293 N. Y. 18) a Florida decree of divorce was adjudged a nullity for the same reason at the instance of a child of the deceased spouse who had obtained the decree. But in that case also the wife was not served with process personally in the State of Florida nor did she appear in the action. In that case, it is true, that after the divorce was obtained by the husband he remarried and, after such remarriage, the wife procured the Florida divorce proceeding to be amended, *nunc pro tunc,* to recite her appearance in the action originally. After having the Florida decree so amended, she remarried. The Court of Appeals, nevertheless, held the decree of divorce void, and that its invalidity was not cured by the later attempt to note a personal appearance of the defendant in the Florida action, as of the date of the original decree of divorce.

So, too, Nevada divorces were attacked collaterally and declared invalid in *Stevralia* v. *Stevralia* (182 Misc. 1050), *Matter of Bingham* (265 App. Div. 463, motion for leave to appeal denied 290 N. Y. 929) and *Forster* v. *Forster* (182 Misc. 382) and a Florida divorce was declared invalid in *" Kurski "* v. *" Kurski "* (185 Misc. 97). In each of these cases the invalidity was due to the fact that the respective plaintiffs in the Nevada and Florida actions were not bona fide residents of the State in which the actions were brought. The collateral attacks on the Nevada and Florida decrees were permitted and were successful in each of those cases, because in none of them were the defendants served with process in the States in which the actions were brought nor did the defendants appear in any of said actions.

In *Solotoff* v. *Solotoff* (269 App. Div. 677) the validity of an Ohio divorce was involved. In a separation action by the wife, the husband interposed as a defense a decree of divorce procured by him in Ohio, in an action in that State in which the wife was served by publication, and on the basis thereof moved for summary judgment. His motion was denied on the ground that she could attack the decree in this State collaterally and had the right to establish that the Ohio courts had no jurisdiction of the subject matter, by reason of lack of *bona fides* of the husband's residence in Ohio at the time when the Ohio court granted its decree. And the court so held, despite a belated attempt on the part of the wife to file a belated answer and a motion on her part for a new trial in the Ohio courts.

Plaintiff contends strenuously that the *Lindgren* and *Solotoff* cases (*supra*) in which there were appearances, by *both* parties in the foreign court, and in which the divorce decrees were declared invalid and the favorable comment on those cases in the "*Kurski*" case (*supra*) should determine this action in his favor.

The contention overlooks the fact that the belated attempt to note defendant's appearance in the *Lindgren* case (293 N. Y. 18, *supra*) was not regarded by the Court of Appeals as an appearance and its decision was predicated on nonappearance. So too, in the *Solotoff* case (*supra*), the Ohio decree was obtained by default on constructive service. The later attempt by defendant in that action to file an answer and move for a new trial, the court held, did not confer jurisdiction of the subject matter of the action when it was instituted. For the purpose of a determination of the *Solotoff* case, the court treated the Ohio judgment as having been obtained by default, by constructive service and without the personal appearance of defendant. Indeed the same court (Appellate Division, Second Department) which decided the *Solotoff* case in 1945, decided the *Shea* case (270 App. Div. 527) in 1946, and in the *Shea* case (*supra*) expressly stated that there was no conflict between its decisions in the *Shea* case and in the *Solotoff* case, because in the *Solotoff* case the Ohio judgment was obtained by default on constructive service on defendant, while in the *Shea* case, the Illinois judgment was recovered on personal appearance by the defendant.

The only two cases which have been called to my attention in which the precise point here raised was litigated are the cases of *Rosenberg* v. *Perles* (182 Misc. 727) and *Shea* v. *Shea* (270 App. Div. 527). In *Rosenberg* v. *Perles* (*supra*) decided in 1944, the Kings County Special Term held that the second husband was entitled to an annulment and could collaterally attack a Nevada decree of divorce obtained by his wife from her first husband, because she was not a bona fide resident of Nevada, even though the first husband appeared by attorney in the Nevada action.

This case would seem to be authority to grant plaintiff the relief he seeks in the action.

However, in the *Shea* case (*supra*), decided in April, 1946, the holding is directly to the contrary and impliedly overrules the decision in the *Rosenberg* case (*supra*).

In that case the wife instituted an action for divorce against her then husband in the courts of Illinois. He appeared per-

sonally in the action and a decree of divorce was obtained by the wife. The judgment recited these facts and made a finding of jurisdiction of the parties, of the subject matter and of the residence of plaintiff in Illinois. The wife remarried and her second husband died. She brought an action against the executors of her second husband's estate for a declaratory judgment that she was the widow of the second husband.

The executors sought to attack collaterally the validity of the Illinois decree and to examine the wife's first husband as a witness before trial for the purpose of establishing that a fraud was perpetrated on the foreign court in respect to residence or domicile.

The court denied the right to such examination, on the ground that such evidence would be ineffective as a defense.

In disposing of the matter, the court said at page 530: " In this State, in personal appearance cases, a foreign divorce decree may not be attacked collaterally where the issue of residence was contested in the foreign jurisdiction * * *, nor where, although the opportunity to do so was present, the issue was not litigated."

In this case, the defendant's first husband appeared in her Nevada divorce action; whether the issue of residence was raised and litigated or not, the opportunity to do so was present.

Under the authority of the *Shea* case (*supra*) this plaintiff cannot attack the Nevada decree collaterally.

Plaintiff urges that, in the decision in the *Shea* case (*supra*) which was by a divided court of three to two, the dissenting opinion is more logical than the prevailing opinion and should be followed by this court. Without even presuming to consider the question of whether or not there is more logic in the dissenting than in the prevailing opinion in the *Shea* case (*supra*), it would be strange procedure indeed for the Special Term to adopt as its guide, in disposing of this matter, the dissenting opinion, when the prevailing opinion must be accepted as the law.

The application for a decree of annulment is denied and plaintiff's complaint is dismissed upon the merits. Submit findings of fact, conclusions of law and judgment in accordance with this opinion.