OLGA SHEA, Appellant, v. MARTIN F. SHEA et al., as Executors of WILLIAM J. SHEA, Deceased, Respondents.

Second Department, April 1, 1946.

*Otto C. Sommerich, John J. Delaney* and *Elvin N. Edwards* for appellant.

*Henry A. Uterhart, Thomas E. Shea* and *Alfred M. Schaffer* for respondents.

CARSWELL, J. Plaintiff instituted an action for divorce against her then husband, Kilgallon, in the Superior Court of Illinois, a court of unquestioned jurisdiction. Kilgallon appeared personally and on January 17, 1935, plaintiff obtained a decree. The judgment recites these facts and makes a finding of jurisdiction of the parties, the subject matter and of the residence of plaintiff in Illinois. The defendants herein seek to attack collaterally the validity of the Illinois decree and to examine Kilgallon as a witness before trial to that end, in this action, in which plaintiff seeks a declaratory judgment that she is the widow of defendants' testator.

(a) An examination before trial may not be had to obtain evidence which would be ineffective as a defense. (*Goldstein* v. *Valentine*, 246 App. Div. 610; *Cash* v. *American Specialty Tailoring Co.*, 157 App. Div. 729; McCullen on Examinations Before Trial, p. 272.)

(b) The basic doctrine controlling herein is stated by O'BRIEN, J., in *O'Donoghue* v. *Boies* (159 N. Y. 87, 99): " The want of jurisdiction to render the particular judgment may always be asserted and raised directly or collaterally, either from an inspection of the record itself when offered in behalf of the party claiming under it, or upon extraneous proof, which is always admissible for that purpose. *There is but one solitary exception to this rule, and that is in a case where jurisdiction depends on a fact that is litigated in a suit and is adjudged in favor of the party who avers jurisdiction. Then the question of jurisdiction is judicially decided, and the judgment record is conclusive on that question until set aside or reversed by a direct proceeding.* (*Ferguson* v. *Crawford, supra* [70 N. Y. 253] p. 265." (Italics ours.)

The foregoing stresses a distinction which explains the difference in the effect given *in this State* to foreign divorce decrees based on constructive service, and those based on personal appearance, and gives the reason therefor.

Plaintiff herein could not challenge the decree in the action in Illinois which she brought against Kilgallon, her former husband. It is valid on its face, since Kilgallon appeared in that action. He does not attack the decree. He may not in the absence of a claim (which is not made) that his appearance

therein was procured by fraud. It is conclusive upon both of them. In this State, in personal appearance cases, a foreign divorce decree may not be attacked collaterally where the issue of residence was contested in the foreign jurisdiction (*Tiedemann* v. *Tiedemann,* 172 App. Div. 819, affd. 225 N. Y. 709, writ dismissed 251 U. S. 536; *Schneider* v. *Schneider,* 232 App. Div. 71, 73; s. c. 238 App. Div. 792, 263 N. Y. 641; *Kinnier* v. *Kinnier,* 45 N. Y. 535), nor where, although the opportunity to do so was present, the issue was not litigated. (*Frost* v. *Frost,* 260 App. Div. 694, 696, and cases cited therein; *Watters* v. *Watters,* 259 App. Div. 611, 613; *Hynes* v. *Title Guarantee & Trust Co.,* 249 App. Div. 732, affd. 273 N. Y. 612; *Borenstein* v. *Borenstein,* 272 N. Y. 407; *Guggenheim* v. *Wahl,* 203 N. Y. 390, 396–397; *Hess* v. *Hess,* 276 N. Y. 486; *Sorensen* v. *Sorensen,* 219 App. Div. 344; *Matter of Pratt,* 233 App. Div. 200.)

The defendants herein, strangers and not in privity with either spouse, seek to attack collaterally the decree. They wish to examine Kilgallon to sustain a claim that a fraud was perpetrated on the court in the foreign State in respect of the issue of residence or domicile. Neither of the parties to that decree may now inquire into that phase collaterally. Particularly, Kilgallon may not do so. That was an issue in the action and when decided, rightly or wrongly, a determination thereon was conclusive, because Kilgallon, having appeared in the action, could have litigated that issue. The determination therein is *res judicata,* as would be a determination on any other relevant issue of fact. This rule was enforced in the cases cited (*supra*) and in *Kinnier* v. *Kinnier* (45 N. Y. 535), and has been consistently adhered to. (*Ruger* v. *Heckel,* 85 N. Y. 483; *Arcuri* v. *Arcuri,* 265 N. Y. 358, 361.)

As the original parties thereto may not attack the judgment, the defendants, strangers herein, may not do so. (*Hynes* v. *Title Guarantee & Trust Co.,* 273 N. Y. 612, 615.) Defendants' testator is not deemed to be " one whose rights have been directly invaded "; and even if they were invaded, he would be required to make the attack directly. (*Arcuri* v. *Arcuri,* 265 N. Y. 358, 361.) It would be intolerable to allow a third party or a stranger collaterally to disturb the validity of a matrimonial status or judgment where both the original parties thereto appeared and were barred from questioning its validity. To afford such an opportunity would give rise to widespread social disorder and create a fertile field for blackmail.

A different view would ignore the distinction enforced in this State between a foreign decree based on constructive

service, and one based on personal service or appearance. The former is invalid on its face and ineffectual, except for grounds in the nature of estoppel (*Krause* v. *Krause*, 282 N. Y. 355), while the latter is valid on its face and is accorded full effect in this State.

(c) Public policy in respect of matrimonial status is for determination by each State. The Federal cases do not and may not compel a State to give full faith and credit to a decree of a foreign State when it deems that such a decree offends its public policy. Conversely, a State is free to give recognition to the decrees of a foreign State in actions where that foreign State grants a divorce on grounds not recognized in the State of original domicile, if it concludes that such decrees do not offend its public policy.

When a State deems that a foreign decree offends its public policy, it can refuse to give effect to the decree within its own borders. If the foreign decree is based on constructive service, that suffices as a basis for refusing recognition, even in New York, because there is a *patent* defect of jurisdiction. Another example is the so-called mail order Mexican decree. Such a decree recites that each spouse resides in a named State of the United States. It does not adjudge that either resides in Mexico. Hence although it recites that each spouse appears by named attorneys, it reveals that the marital *res* was not before the court, as neither spouse was or could be adjudged a resident of the jurisdiction when the cause was heard. Since the face of the decree discloses this fact, there is a *patent* defect of jurisdiction, and the decree is void. (*Querze* v. *Querze*, 290 N. Y. 13; *Vose* v. *Vose*, 280 N. Y. 779.) If the grounds upon which the foreign decree is granted are not those of the State of original domicile, such a State is free, perforce its public policy, even where there has been a personal appearance, to re-examine the question of jurisdiction of subject matter to ascertain if there is a *latent* defect of jurisdiction, as a consequence of the antecedent or original domicile of the parties, and the effect thereon of its declared public policy. If, on such re-examination, the facts relating to domicile do not sustain jurisdiction, the foreign decree may be refused recognition. (*Andrews* v. *Andrews*, 176 Mass. 92, affd. 188 U. S. 14.) But, contra, if the facts fall without the precise terms of its declared public policy, such a foreign decree may be given recognition (*Chapman* v. *Chapman*, 224 Mass. 427), giving effect, in substance, to the New York rule. The situation in the case of *Andrews* v. *Andrews* (*supra*) concerned the public policy of Massachusetts founded upon a legis-

lative declaration. It has been repeatedly held that the public policy of New York State is dissimilar and that where there has been a personal appearance no such re-examination is here indulged. This difference in public policy has been noted explicitly. (*Glaser* v. *Glaser,* 276 N. Y. 296, 301.) In this State public policy is not offended when citizens, originally domiciled here, go to another jurisdiction to obtain a divorce founded on personal service and personal appearance and based on grounds which do not obtain in this State. (*Glaser* v. *Glaser,* 276 N. Y. 296, 299; *Matter of Rhinelander,* 290 N. Y. 31, 36–37.) This distinction between the public policy of New York and the public policy of other States, such as Massachusetts, which have recourse, for local policy reasons, to the doctrine of *Andrews* v. *Andrews* (188 U. S. 14) is widely recognized. (Bingham, 29 Cornell Law Quarterly, pp. 1, 25.) It is our duty to enforce the public policy of New York State (*Hubbard* v. *Hubbard,* 228 N. Y. 81, 85) and to do so by following the doctrine of *O'Donoghue* v. *Boies* (159 N. Y. 87, *supra*) and *Kinnier* v. *Kinnier* (45 N. Y. 535, *supra*), consistently enforced in the cases cited above. The obligation and right to do so have been recognized in *Tiedemann* v. *Tiedemann* (225 N. Y. 709, writ dismissed 251 U. S. 536).

The reasoning of the minority herein, disregarding the public policy of New York and giving effect to a different public policy, based on the *Andrews* case (*supra*), was advanced and rejected (as an examination of the record on appeal reveals) in *Borenstein* v. *Borenstein* (272 N. Y. 407), as it was in *Tiedemann* v. *Tiedemann* (172 App. Div. 819, 822, affd. 225 N. Y. 709). Both cases concerned decrees based on personal appearance.

(d) To summarize, there are three parties to the marital status, the State and the two contracting parties. Primarily, only these three are concerned with the legal phase of its creation or dissolution. When a foreign court acquires jurisdiction in personam of the parties to the marital status, has jurisdiction of the subject matter, and adjudicates upon the question of domicile, the validity of its decree, in this State, is the concern only of the parties and the State. In the absence of fraud in procuring an appearance of either spouse, the parties are bound and, under these circumstances, since its public policy is not offended, this State accords full faith and credit to the decree and, in that sense, is also bound. Such a judgment is immune to collateral attack. No one else has standing to challenge the decree or the changed status. This

is so because the action is in rem, insofar as it relates to the marital *res,* and all third parties are bound by an adjudication in respect of jurisdiction of the *res,* which is of a character that satisfies the law of this State. Hence, strangers may not attack the decree collaterally. If, however, the decree rests upon constructive service, its patent lack of jurisdiction impels this State to give it no force, except under special circumstances in the nature of estoppel, etc., and the aggrieved spouse, or any one else who may be legally affected, directly or indirectly, may be permitted to attack collaterally.

(e) These views are not in conflict with *Solotoff* v. *Solotoff* (269 App. Div. 677) and *Matter of Lindgren* (293 N. Y. 18). In each of those cases the foreign judgment rested on constructive service, and for that reason is not recognized under the decisions. Such a judgment is void in this State. (*Winston* v. *Winston,* 165 N. Y. 553, 555; *Lefferts* v. *Lefferts,* 263 N. Y. 131.) The invalidity appearing on its face, the judgment could be attacked collaterally. In the *Lindgren* case, apart from the constructive service element, the plaintiff, in privity with the spouse who was the subject of constructive service, could attack the Florida judgment because the status of the adverse party there came into being, if at all, when a second marriage occurred, which was at a time when the first marriage was invalid on its face because of the element of constructive service.

There was nothing *decided* to the contrary in *Williams* v. *North Carolina* (317 U. S. 287) or *Davis* v. *Davis* (305 U. S. 32), constructive service cases, or indeed new. (*People* v. *Baker,* 76 N. Y. 78.) *Matter of Holmes* (291 N. Y. 261) is likewise in accord.

It is unnecessary to pass upon the effect of the dismissal of proceedings in the Illinois court instigated by defendants to challenge the validity in Illinois of the decree there granted.

These views bar an examination of the witness, as a matter of law, under items " 2 ", " 3 " and " 4(b) ". There may not be an examination under item " 1 " because the facts therein are admitted; nor under item " 4(a) " because no justification therefor is shown in the record. Hence, the order should be reversed on the law, with $10 costs and disbursements, and the motion denied, with $10 costs.

LEWIS, P. J. (dissenting). This action was brought by the plaintiff for a judgment declaring that she was the wife and is now the widow of the decedent William J. Shea, and that as his widow she is entitled to her intestate share of his estate.

From the pleadings and the proof adduced at a previous trial, it appears that plaintiff's claim is predicated upon a common-law marriage to the decedent, allegedly entered into outside the State of New York subsequent to her divorce from her former husband, John A. Kilgallon.

Defendants now seek to attack the validity of plaintiff's divorce from Kilgallon on the ground that the court of the State of Illinois which rendered the decree was without jurisdiction by reason of the fact that neither of the parties to the divorce proceeding was a bona fide resident of that State. In support of their attempt to impeach the Illinois judgment, and in an endeavor to show that the parties thereto were residents of this State, the defendants have obtained an order for the examination of Kilgallon before trial, primarily on the question of his residence and that of the plaintiff for the three years preceding the institution of the Illinois action. On this appeal from that order, plaintiff's principal contention is that the Illinois judgment is not subject to collateral attack and is a valid and binding determination because the witness Kilgallon, who was the defendant in that proceeding, had appeared therein and the court rendering the decree had thereby obtained jurisdiction.

The question thus presented is whether a judgment of divorce rendered by a court of another State having jurisdiction of the persons of both parties must be recognized by the courts of this State, where it is claimed that the parties were not domiciled in that State but were in fact residents of the State of New York. In my opinion, that question must be answered in the negative. The power of a court to grant a decree of divorce is based fundamentally upon jurisdiction of the subject matter, which in turn depends upon the domicile in the State of at least one of the parties to the action. (*Andrews* v. *Andrews*, 188 U. S. 14.) The appearance of the parties, in the absence of domicile, cannot confer jurisdiction to render the judgment. (*Andrews* v. *Andrews, supra; Matter of Lindgren*, 293 N. Y. 18; *Solotoff* v. *Solotoff*, 269 App. Div. 677.) This is based upon the elementary rule that where jurisdiction of the subject matter is lacking, it cannot be granted by consent of the parties. (*Robinson* v. *Oceanic Steam Nav. Co.*, 112 N. Y. 315.)

The importance of domicile as the decisive element upon which jurisdiction of the subject matter depends, is emphasized in *Williams* v. *North Carolina* (325 U. S. 226, 229) wherein it is stated: " Under our system of law, judicial power to grant

a divorce — jurisdiction, strictly speaking — is founded on domicil." Cases such as *Kinnier* v. *Kinnier* (45 N. Y. 535) where the appearance of the parties was considered conclusive on the question of jurisdiction, and the cases following it, must be deemed to have been overruled by *Andrews* v. *Andrews* (*supra*) and *Matter of Lindgren* (*supra*). Even in the *Kinnier* case (*supra*), the necessity of jurisdiction over the subject matter was recognized and such jurisdiction in the Illinois court was assumed; without, however, any consideration of that question as affected by the domicile of the parties.

The basic principles which are here involved are that lack of domicile of both parties to an action for divorce in the State in which the action is commenced deprives the courts of that State of jurisdiction of the subject matter; that such jurisdiction cannot be conferred by appearance or consent; and that a party against whom the judgment is offered may show that it is void on the ground that the court which rendered it lacked such jurisdiction.

The majority opinion recognizes that a decree of divorce obtained in another State upon constructive service is subject to attack. But if jurisdiction to render the judgment.— jurisdiction of the subject matter — depends upon domicile, as seems to be authoritatively established by the cases cited above, the question of jurisdiction of the person becomes of relatively minor importance (*Andrews* v. *Andrews*, 188 U. S. 14, 39, *supra*), so long as the requirement of due process is met. Regardless of defendant's appearance, the fundamental inquiry must be whether at least one of the parties was a bona fide resident of the State in which the action was begun. The appearance of the defendant may be a determinative factor where the doctrine of estoppel or *res judicata* is involved, but those questions are not presented on this record, as the defendants were not parties or privies to the challenged Illinois decree.

Once we accept the propositions that domicile is essential to jurisdiction, and that a judgment rendered without jurisdiction is a nullity, it follows that the defendants may establish the jurisdictional defect in the Illinois action by proof that the parties thereto were not residents of that State. In determining the question of domicile, the courts of this State may inquire into the status of a party as a bona fide resident of the granting State, and such inquiry is not precluded by the appearance in the action of the nonresident defendant. Nor are our courts foreclosed from examining the question of domicile by the determination of the other State that it had power to award the

decree. "Otherwise, as was pointed out long ago, a court's record would establish its power and the power would be proved by the record." (*Williams* v. *North Carolina*, 325 U. S. 226, 234, *supra.*) (Cf. *O'Donoghue* v. *Boies*, 159 N. Y. 87, 98.) The effect of a contest in the granting State on the jurisdictional issue is not here involved. (Cf. *Davis* v. *Davis*, 305 U. S. 32.)

These conclusions are in accord with the rule in other jurisdictions. (*Estate of Davis*, 38 Cal. App. 2d 579; *Brill* v. *Brill*, 38 Cal. App. 2d 741; *Coe* v. *Coe*, 316 Mass. 423; *Ainscow* v. *Alexander*, 39 A. 2d 54 [Del.].)

If we adhere to the basic legal principles which have been discussed, we need anticipate neither chaos in the law of divorce nor impairment of our social structure. On the contrary, short of uniform divorce laws throughout the States, stability and finality can best be promoted by strict compliance with the rule that a court purporting to grant a decree of divorce must have jurisdiction of the subject matter before its judgment will be entitled to full faith and credit under the Federal Constitution.

The order appealed from, insofar as it permitted the defendants to examine the witness as to the residence of the parties to the Illinois divorce action, was therefore proper. I agree with the majority, however, that it was error to allow an inquiry into allegedly fraudulent testimony in that action concerning the acts of cruelty committed by the witness, upon which the divorce was granted. The judgment may not be collaterally impeached on that ground. (*Arcuri* v. *Arcuri*, 265 N. Y. 358.) The order should be modified on the law by striking therefrom items 1, 3, 4(a), and that portion of item 4(b) reading " and acts of cruelty committed by said witness in that State," and as so modified the order should be affirmed.

JOHNSTON, J., concurs with CARSWELL, J.; NOLAN, J., concurs in the result; LEWIS, P. J., dissents and votes to modify the order by striking therefrom items 1, 3, 4(a), and that part of item 4(b) reading " and acts of cruelty committed by said witness in that State ", and as so modified to affirm the order, with opinion in which Hagarty, J., concurs.

Order reversed on the law, with $10 costs and disbursements, and the motion denied, with $10 costs. [See *post*, p. 906.]