" ELIZABETH A. CANNON ", on Behalf of " MARGARET CANNON " and Another, Petitioner, *v.* " ARTHUR J. CANNON ", Respondent.*

" ELIZABETH A. CANNON ", Petitioner, *v.* " ARTHUR J. CANNON ", Respondent.*

Domestic Relations Court of the City of New York, Family Court, Queens County, July 9, 1947.

* The opinion as filed sets forth the true names of all parties, but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act (L. 1933, ch. 482, as amd.).

*Louis Alfred Schwartz* for petitioners.

*A. Allen Saunders* for respondent.

SICHER, **J.** These are companion proceedings, by consent tried simultaneously.

The first is based on a petition filed by a mother in behalf of twin children, pursuant to section 111, subdivision 2 of section 29, subdivision (1) of section 91, subdivisions (1), (2), (3) and (4) of section 92, subdivision 1 of section 101 and subdivision 1 of section 103 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482, as amd.).

In that proceeding the sole contested issue is the " fair and reasonable sum according to his means " (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 1) which the respondent-father should be ordered to contribute. For, he expressly concedes the court's jurisdiction and his chargeability for those children's support but contends that the weekly sum of $25 he has been sending to the mother without court order continuously since October, 1945, was the maximum within his then financial ability and greater than it is now possible for him to keep paying under his present circumstances.

The legal principles governing that issue of fact are well established. (See 39 Am. Jur., Parent and Child, § 36; *Schacht v. Schacht,* 187 Misc. 461, especially cases cited at pp. 464–465.) So, it is regrettable that seasoned counsel could not persuade their respective clients to heed the court's urging that they agree upon a figure, and each will now doubtless be dissatisfied with today's order, entered upon the voluminous record necessitated, on the one hand, by the mother's unrealistic insistence on an excessive award and, on the other hand, the nature of respondent's occupation (night club " master of ceremonies ") and the consequent difficulty of ascertaining his net earning capacity under lush wartime conditions and now during the current recession in that luxury business.

And that difficulty is enhanced by emotional factors. Some of them will appear from analysis of the second proceeding, which,

unlike the other, involves disputed questions of law as well as of fact.

The petition therein prays that respondent be required to contribute $50 a week toward the mother's personal support, in addition to the $50 per week demanded for the children's support. Respondent denies the mother's right to support for herself in *any* amount, upon grounds summarizable as: (1) The marriage relationship was duly terminated by a May 22, 1946, decree of the Chancery Court of Garland County, State of Arkansas, entered in an action which was instituted by respondent (" Arthur J. Cannon ") as plaintiff and in which was duly filed, and recited in the decree, the duly signed appearance and waiver of " Elizabeth A. Cannon " (petitioner-wife herein) as defendant; and (2) in any event, respondent's only duty enforcible by this court would be the residual obligation to indemnify the City of New York against the burden of her support, and she is not now, nor likely to become, a " public charge ", there or elsewhere.

Moreover, such second proceeding presents a question — not considered in any reported decision — as to the precise meaning and effect of the concluding phrase in subdivision (3) of section 92 of the Domestic Relations Court Act of the City of New York, the whole of which section reads: " To require of persons legally chargeable with the support of a wife, child or poor relative and who are possessed of sufficient means or who are able to earn such means, the payment weekly, or at other fixed periods, of a fair and reasonable sum for such support, or as a contribution towards such support, according to the means of the persons so chargeable; *provided, however, that the amount that the court may require a respondent to pay for the support of the petitioner shall not exceed fifty dollars a week.*" (Italics supplied.)

Petitioners' attorney earnestly urges that the just quoted $50 a week limitation sets the maximum for *each* dependent in the light of the definition of " petitioner " in subdivision (11) of section 2 of the Domestic Relations Court Act, " The person for whom support is asked shall be known as the petitioner "; and that neither by express words nor fair implication does the statute as a whole preclude multiple petitions nor aggregate awards thereunder in excess of $50 per week.

Those arguments seem specious. However, to enable petitioner to make a record for appellate determination of the question this court adopted the stipulated procedure of accepting one petition for support of the children only and a second

petition in behalf of the alleged wife and trying the respective issues thereunder simultaneously, upon the understanding that respondent's acquiescence in that practical program did not constitute a waiver of any contention as to his nonchargeability for support of "Elizabeth A. Cannon" or the limitation of $50 per week on this court's jurisdiction.

For the following reasons the second petition is hereby dismissed, as matter of law, without prejudice, however, to a plenary action in the Supreme Court of the State of New York (*Loomis* v. *Loomis,* 288 N. Y. 222) or to any remedies available in the Chancery Court of Garland County, Arkansas, in respect of the May 22, 1946, decree of divorce and the suit in which it was rendered.

"Elizabeth A. Cannon" and "Arthur J. Cannon" were duly married at X-town, New Jersey, on April 12, 1943, and "Margaret" and "David", twin children, born October 20, 1943, are their lawful issue. It was "Elizabeth A. Cannon's" first marriage; "Arthur J. Cannon's" third.

In a Nassau County, New York, house, purchased by respondent, the parents and children lived as a family unit until August, 1944, when the wife and children moved out to the maternal grandmother's home in Y-ville, Connecticut. Thereupon, the furniture was placed in storage and the Nassau County house sold; out of the sale proceeds the wife received $1,000 in cash and later the gift of an expensive fur coat, but the balance was soon dissipated by respondent.

There was a reconciliation during the 1944 Christmas holidays, and in February, 1945, the parties set up another united home in a New York City apartment and maintained it until October, 1945, when came another and final break, the wife and children again going to the maternal grandmother's home in Y-ville, Connecticut. Continuously since they have remained there and respondent has been contributing toward the children's support with substantial regularity $25 each week.

Whether the separation originated in an abandonment on the wife's part or whether by mutual consent is not wholly clear but, under the particular circumstances, immaterial.

No weight is accorded to an *undated,* typewritten paper, prepared by the husband's then lawyer (not, however, his present attorney), and signed by the wife without advice of counsel, probably before the reconciliation between the first and the final separations, which paper recites that "she no longer wants to continue her marriage status as the wife of 'Arthur J. Cannon'; * * * that she quit the home of her husband

by her own free will and against the expressed wishes and desire of her husband; * * * that she waives her right to any claim for separate maintenance, support or alimony which she now has or which she may acquire against her husband ".

Likewise, the formal separation agreement prepared by respondent's present attorney and executed by both spouses in his office on March 26, 1946, has limited probative force. Not only was the wife then not individually represented and her waiver of all future support for herself contravenes section 51 of the Domestic Relations Law (*Glickman* v. *Glickman,* 194 App. Div. 100; *Kershner* v. *Kershner,* 244 App. Div. 34), but the provision for acceptance of " a minimum of Fifteen Dollars per week " for the maintenance of the two children is concededly not binding upon them in this proceeding (N. Y. City Dom. Rel. Ct. Act, § 137, subd. 5; " *Johnston* " v. " *Johnston* ", 177 Misc. 618; " *Stone* " v. " *Stone* ", 44 N. Y. S. 2d 558; *Schacht* v. *Schacht,* 58 N. Y. S. 2d 54, and second opinion, 187 Misc. 461, *supra*).

Nevertheless, the evidence is abundant, and substantially undisputed, that the October, 1945, final separation and respondent's subsequent procurement of an Arkansas divorce were by mutual consent, and that there was never any offer on the wife's part to return to her husband and resume the marital status.

" Elizabeth A. Cannon " testified that she did not read the afore-mentioned Arkansas divorce action notice of appearance and waiver before signing it and that she was unfamiliar with its purpose and effect. But she admitted signing it in her husband's presence at his lawyer's office with the knowledge that her husband wished and planned a divorce, and that at that time she was willing, indeed strongly desirous, that her brief and unhappy union with respondent be dissolved.

Upon cross-examination of respondent concerning his income and expenditures during 1946 there were developed certain facts which render doubtful the *bona fides* and actuality of the Arkansas domicile on which said May 22, 1946, divorce decree was predicated. However, " In this State, in personal appearance cases, a foreign divorce decree may not be attacked collaterally where the issue of residence was contested in the foreign jurisdiction * * *, nor where, although the opportunity to do so was present, the issue was not litigated." (*Shea* v. *Shea,* 270 App. Div. 527, 530.) The case just cited is an Appellate Division, Second Department, decision, which must be followed in this proceeding.

True, in *Lane* v. *Lane* (188 Misc. 435, 437), Supreme Court, New York County, Special Term, Mr. Justice EDER wrote: "With due deference to the ruling in the *Shea* case (*supra*), in the absence of a ruling to like effect by the Appellate Division of this department I am inclined to reach an opposite conclusion, and in doing so I am persuaded by the reasoning of Presiding Justice LEWIS * * *."

But the appeal in *Lane* v. *Lane* (*supra*) has been withdrawn; meanwhile the Appellate Division, First Department, has indicated its approval of the majority view in *Shea* v. *Shea* (*supra*) expressly in *Urquhart* v. *Urquhart* (272 App. Div. 60) and impliedly in *Senor* v. *Senor* (272 App. Div. 306); and in any event, this inferior court of limited jurisdiction, sitting in the Second Department, is bound by *Shea* v. *Shea* (*supra*). Apposite to that phase is this comment of Supreme Court Justice BOOKSTEIN: "Plaintiff urges that, in the decision in the *Shea* case (*supra*) which was by a divided court of three to two, the dissenting opinion is more logical than the prevailing opinion and should be followed by this court. Without even presuming to consider the question of whether or not there is more logic in the dissenting than in the prevailing opinion in the *Shea* case (*supra*), it would be strange procedure indeed for the Special Term to adopt as its guide, in disposing of this matter, the dissenting opinion, when the prevailing opinion must be accepted as the law." (*Holloway* v. *Holloway,* 187 Misc. 388, 392.)

Nor is a different conclusion required by the ruling in *Averbuck* v. *Averbuck* (270 App. Div. 116) that a spouse is not precluded from questioning the validity of a sister State decree based on an appearance in the granting court which was induced by fraud, coercion or duress. Although there is here presented an instance of the too frequent, questionable practice of a consensual divorce arranged by an attorney retained by one spouse but purporting to act for both, there is not a scintilla of evidence that "Elizabeth A. Cannon" was deceived or forced to sign the formal paper necessary for procurement of the consent divorce both spouses then desired. The record is clear that she knowingly co-operated toward her husband's procuring a divorce in some State of easy requirements, though she may have later regretted her acquiescence, either because still fond of respondent and resentful of his speedy remarriage or because she had come to realize the disadvantages and financial burdens of a divorced mother of two young children.

For all of the foregoing reasons the provisions of said May 22, 1946, Arkansas divorce decree, including the award of custody

of the children to the mother, must be recognized by this court; and the supplemental petition filed in her personal behalf falls within the orbit of subdivision 1 of section 137 of the Domestic Relations Court Act, which reads: " 1. If the marriage relationship shall have been terminated by final decree of the supreme court of the state of New York or by judgment of any other court of competent jurisdiction, when valid in the State of New York, a petition may be filed or an order for support made or enforced in the family court only for the benefit of a child of such marriage."

Moreover, the situation may be treated as one where the parties separated by mutual consent without any subsequent offer on the wife's part to resume the marital status. Accordingly, even assuming *arguendo* the invalidity of the Arkansas divorce decree, " Elizabeth A. Cannon " would not be entitled to an order for her own support according to respondent's " means and station in life " (*Batchelor* v. *Batchelor,* 295 N. Y. 544; *Solomon* v. *Solomon,* 290 N. Y. 337) but only on a " public charge " basis (*People* v. *McCarthy,* 257 N. Y. 567, affg. *sub nom. City of New York* v. *McCarthy,* 139 Misc. 746; *People* v. *Schenkel,* 258 N. Y. 224), and she is now self-supporting.

Such dismissal of the supplemental petition renders academic the question of the $50 per week limitation in subdivision (3) of section 92 of the Domestic Relations Court Act. But it may not be inappropriate to comment that the statutory purpose is to fix $50 a week as the maximum which any one respondent may be required to pay for the same family unit, and that the device of multiple, separate petitions for each dependent should not be countenanced. For, the intended purpose of the limitation written into the statute creating the Family Court was to divert to the Supreme Court all matrimonial litigation where the husband-father might be in a position to pay more than $50 a week, to constitute the Family Court a so-called " poor man's court ", and to circumscribe accordingly its concurrent jurisdiction with the Supreme Court.

In the Domestic Relations Court Act there is no provision for counsel fees; the word " petitioner " is not used uniformly as referring only to each person for whom support is asked (see, for example, N. Y. City Dom. Rel. Ct. Act, § 29, subd. 2); section 112 of the Domestic Relations Court Act states: " The petition shall be * * * in such form as may be prescribed by the board ", and the uniform prescribed practice has been a single petition for the " family " (a wife and child or children), to amend such a petition by including any child born

after its original filing (for example, the familiar case of reopening a " Reserved Generally " proceeding after a reconciliation) or, if the proceeding was begun with a " wife only " petition, to amend it similarly by adding any after-born child.

The $50 per week figure may well be too low nowadays in cases where there are one or more children as well as a wife seeking support; conceivably, there may be hardship when there are many children and the father has substantial resources, especially in a case where the Supreme Court lacks jurisdiction (see, for example, " Mooney " v. " Mooney ", 187 Misc. 789). But those are considerations for the Legislature; indeed, proposals for appropriate statutory amendment have recently been submitted to the Judicial Council of the State of New York.

There remains for determination only the question of the " fair and reasonable sum " respondent may now be required to pay for the support of his twin children.

Obviously, because they are nearly four years old and the cost of living has increased, their needs are greater now than when respondent voluntarily started, in October, 1945, contributions of $25 a week. But the father's means as well as the children's needs must be considered; also, the court must be circumspect that the amount of its order for the children's support should not be such as to include by indirection an unauthorized alimony allowance for the mother herself, nor, on the other hand, shift to her any part of the father's primary duty for support of minor children.

Ideally, these children should be removed from the grandmother's crowded home and maintained in an apartment occupied only by themselves and their mother and cared for by her constantly. But that ideal is unattainable under existing housing conditions and the recent and prospective decrease in respondent's earnings.

Twenty-five dollars per week is less than he should have contributed out of his substantial earnings for 1945 and 1946; on the other hand, the demanded sum of $50 a week is beyond his present financial ability.

The evidence establishes that respondent has high gross earning capacity but in a field where the expenses are relatively large and incapable of exact determination. Respondent furnished no precise particularization of his alleged overhead expenses, leaving open to doubt whether the figures in his Federal income tax returns and the exhibits prepared for the hearings in this court were not exaggerated and whether some of his alleged business overhead did not in truth constitute personal

living expenses. Manifestly, he is a lavish and careless spender, and disposed to preference for the comforts and happiness of himself and his fourth wife (whom he married on July 8, 1946). She is an intelligent, personable young woman, who knew that at the time of her marriage to him he was under a prior obligation to support " Margaret " and " David ", and who has handled his personal finances and arranged for the periodic remittances for those children. The major burden of the consequence of the drop in respondent's income should not be cast on those children but, in justice, should be at least partly absorbed by closer budgeting of respondent's personal and business expenditures or, if need be, by cashing some of the War Savings Bonds, of the aggregate maturity value of $1,800, still in respondent's possession.

After study of the exhibits and briefs and careful reflection on all relevant factors (including the presumption of ability to support contained in N. Y. City Dom. Rel. Ct. Act, § 131), the court finds that respondent is chargeable with the support of his twin children, as alleged in the petition; and respondent, therefore, is hereby ordered and directed to pay into this court the sum of $35 each and every week beginning on and as of April 8, 1947, in manner following: (a) On or before July 15, 1947, the sum of $35, and on each and every Tuesday thereafter the like sum, until further order of the court; and (b) In addition, on or before August 12, 1947, a sum equivalent to the difference between the aggregate of $35 for each and every week beginning April 8, 1947, up to and including July 8, 1947, and the amount of all $25 per week sums petitioner will have received direct from respondent between April 7, 1947, and July 8, 1947.

All payments shall be made to the Support Bureau, by post office or express money order or by certified check, in accordance with the usual practice of this court.

Today's order has been made retroactive to the date of the filing of the petition for the children's support pursuant to Family Court Rule XIV, effective November 1, 1946 (Bender's Court Rules [1st ed.], p. 368), and the comparable practice of the Supreme Court of the State of New York (cf. *McCarthy* v. *McCarthy*, 143 N. Y. 235).

Notice shall be given to the parties pursuant to the subjoined direction.