SYLVIA H. BANE, Plaintiff, *v.* ARTHUR BANE, Defendant.

Supreme Court, Special Term, New York County, July 26, 1948.

*Lesser & Lesser* for plaintiff.

*David E. Firestone* for defendant.

DICKSTEIN, J. In this action the plaintiff, *who was not a party to the divorce suit in question,* is seeking to obtain an annulment of her marriage to the defendant on the ground of the alleged invalidity of the decree of divorce which terminated his prior marriage. If this plaintiff succeeds in obtaining an annulment, then a new vista will be opened up to wives and husbands who, by unilateral action, can upset marriages which have been in existence for many years, regardless of the innocence of the other spouse. Mere whim or caprice or personal disappointment would be sufficient to effect that selfish end where otherwise the law

sagely permits no remedy of any kind. The precedent of a decree of annulment in plaintiff's favor would, in effect, cloak a morally unjustified attack upon matrimonial status with an aura of legal sanction.

On the other hand, failure of plaintiff such as this to succeed would put at rest once and for all the questioning of a spouse's former foreign divorce by his or her present wife or husband. It would bring stability out of chaos, certainty out of conflict, and finalize litigation by leaving it where it belongs — in the courts of sister States where the issues were or could have been raised and tried. Relitigation where an opportunity for an adversary hearing has been given should be, and is, frowned upon (*Jacobowitz* v. *Herson*, 268 N. Y. 130, 133–134; 5 Pomeroy, Equity Jurisprudence, § 2077, p. 4683). The cognate law as well as the facts of this case constrain such approach to the problem here presented.

The undisputed facts in this action reveal that plaintiff and defendant were married in New York in 1945 and that they lived together for almost two years, when, under circumstances evincing some incompatability, they parted. A child was subsequently born. (This circumstance, however, does not affect, nor is it affected by, the decision here reached.) Admittedly, too, defendant had been previously married, but his first wife had obtained a decree of divorce from him in Florida before his marriage to plaintiff. In the action which culminated in that divorce, this defendant appeared and answered, putting in issue the allegations of the bill of complaint. Proof of such allegations was adduced before a special master whose report recommended that a divorce be granted. In the decree of divorce, findings were made by the Eleventh Circuit Court in Dade County, Florida, that there was jurisdiction both of the subject matter of the action and of the parties.

From that point on, however, claims differ. Some of them are factual, such as the financial capacity of defendant, the amount of alimony, if any, to be awarded, as well as support for the infant child, and the right of visitation. These will be disposed of in due course. The principal dispute is entirely legal. Plaintiff urges that defendant's first wife never acquired a valid domicile in Florida which, she contends, is the *sine qua non* of jurisdiction of the Florida court to render any judgment dissolving the marriage between defendant and his first wife.

In support thereof she offered proof, over defendant's objection, that defendant's first wife was always a domiciliary of Passaic, New Jersey; that her sojourn in Miami, Florida, was

solely for the purpose of obtaining a divorce; that she remained there only long enough to satisfy the minimum requirements of residence in that State; and that she returned to Passaic as soon as the divorce decree was granted. Plaintiff sought to fortify these facts by a deposition of defendant's first wife taken in New Jersey which, she claims, proves amply that the Florida court could not have obtained the basic essential of jurisdiction of the subject matter of the action. She claims that, by perjured testimony, the Florida Circuit Court was defrauded and that its judgment was open at all times to collateral attack by a stranger to it. This proof, too, was admitted over defendant's objection.

Defendant forcefully argues that the constitutional mandate of full faith and credit must be scrupulously adhered to by this court in recognizing the unassailability of the Florida decree, since on its face there was jurisdiction of both parties and subject matter; that the plaintiff may not attack collaterally the decree of divorce which, as between defendant and his first wife, was binding and could not be questioned by either of them. That decree, he claims, effectively left both defendant and his first wife unmarried and free to marry again. He further asserts that this plaintiff, a stranger unaffected by that decree, has no more legal or moral right to question the divorce than those who were directly concerned with it. He maintains that evidence which in any way impinges upon the validity of the Florida decree is inadmissible. For that reason he rested upon his legal arguments and offered no factual defense.

My initial reaction was to agree with these arguments. Believing, however, that it would be best for the parties and the court to have the facts adduced before passing upon the objections, I reserved decision on all objections and motions with respect to evidence tending to impeach the Florida decree.

For the purpose of this discussion I am assuming, upon the facts adduced before me relating to the plaintiff's claim that defendant's first wife may not have acquired a sufficiently bona fide domicile in Florida to give the Circuit Court jurisdiction of the subject matter of the action, that there may be an intrinsic infirmity in the decree. I discount *in limine* the plaintiff's suggestion that the Florida decree is also invalid because defendant's first wife went to Florida solely to obtain such decree (*Matter of Rhinelander*, 290 N. Y. 31, 36, 37; *Glaser* v. *Glaser*, 276 N. Y. 296, 299). I dispose also of the contention that the alleged perjury as to domicile invalidates the judgment for fraud upon the court. That, at most, would be intrinsic fraud not sub-

ject to collateral attack. (*Jacobowitz* v. *Herson, supra*; *Arcuri* v. *Arcuri*, 265 N. Y. 358, 361.) There is not even an intimation that the appearance in Florida was obtained by fraud (see *Gagliano* v. *Gagliano*, 56 N. Y. S. 2d 619).

I am not unmindful of the fact that, in necessarily having to trace the development of this branch of the law pertaining to marital relationships in order to determine whether the plaintiff here can, as a matter of law, attack the Florida decree of divorce collaterally, judges are no more immune from fallibility than other human beings in different walks of life. Closeness to the day-to-day problems has, at times, caused them to drift away from fundamentals. To this human trait I attribute the seeming departure, in some of the rather recent decisions of some judges, from the earlier rulings in the higher courts of this State. Luckily, in the latest cases there has been a renascence of the old clarity, which, on deeper contemplation, impels the conclusion that there was never any other reason for confusion.

It is fundamental, for instance, that a judgment in personam is binding only upon the parties to it. Issues litigated and those which could have been litigated in the action, although *res judicata* as between the plaintiff and defendant, are not binding upon any stranger to the action; so that the facts may be relitigated in any collateral action instituted by a stranger to the judgment. The rule is otherwise with reference to a judgment in rem which, it has been said, is binding upon the world when the court which purports to act has jurisdiction over the *res* involved. That this should be so is basic in our jurisprudence.

Jurisdiction in divorce matters is clearly based upon something more than personal jurisdiction over the parties to the suit. The prerequisite of a domicile within the State indicates a requirement that the marital *res* be present and that a decree of divorce operates at least quasi in rem. If the court granting a divorce decree determines that that *res* is within its jurisdiction by the establishment of a domicile within its authorized boundaries and there has been compliance with the strictest requirements of due process by having jurisdiction over the person of the defendant and there is full opportunity to litigate all the issues including that of jurisdiction, the decree is clearly one which must be deemed binding upon the world insofar as it dissolves that *res*.

Jurisdiction in marriage and divorce differs substantially from jurisdiction in commercial actions. The law of catch-as-catch-can has no application in such matrimonial actions; and a plain-

tiff has no standing in a court merely because both plaintiff and defendant are physically present in the jurisdiction of the forum (*Bell* v. *Bell*, 181 U. S. 175). If a sister State, then, aware of these basic principles, siezes the *res* and, exercising customary judicial self-imposed restraint on its power to act, determines in the litigated action that all jurisdictional prerequisites are present, it is a denial of full faith and credit to permit any stranger to that proceeding to attack, in another State, that assumption of jurisdiction.

It is clear, therefore, that the basic jurisdictional requirement in divorce actions is the existence of a bona fide domicile within the confines of the sovereignty which purports to act. For many years the recognition of decrees of sister States based on questioned domiciles varied with the public policy of the forum in which the decree was attacked. Some States had refused recognition as against its citizens; other States granted recognition on the basis of comity, and still others gave practical effect to such divorces on the basis of estoppel. Only a divorce based upon the matrimonial domicile of both parties was deemed to be entitled to the protection of the full faith and credit clause of the Constitution of the United States (art. IV, § 1). (*Atherton* v. *Atherton*, 181 U. S. 155; *Haddock* v. *Haddock*, 201 U. S. 562.)

The first extension of the application of the full faith and credit clause to a divorce involving any lesser domicile developed in the case of *Williams* v. *North Carolina* (317 U. S. 287; 325 U. S. 226). There the United States Supreme Court held that a divorce based upon the bona fide domicile of one spouse only was entitled to the protection of the full faith and credit clause even though there was no personal jurisdiction over the person of the defendant, even though there was no appearance by him in.that action, and even though he was a nonresident of the jurisdiction. This holding, however, presumed the existence of a bona fide individual domicile of the plaintiff and a sister State was expressly authorized to scrutinize the *bona fides* of such domicile. If collateral re-examination disclosed the domicile to have been colorable only, the decree was *not* entitled to full faith and credit and could be upset by collateral attack in the sister State.

Recently the Supreme Court made it clear that the full faith and credit clause applies to those divorces based on the domicile of one spouse only where the nonresident spouse appeared in the action and by the filing of an answer had opportunity to litigate the *bona fides* of the alleged domicile of the moving party. It is now the law that on such facts a re-examination of the

matters litigated or which could have been litigated in that action is forbidden under the constitutional full faith and credit clause. Therefore, no evidence tending to impeach the issues which could have been raised and which were actually adjudicated in such divorce actions can be received in a sister State. (*Sherrer* v. *Sherrer,* 334 U. S. 343; *Coe* v. *Coe,* 334 U. S. 378; *Stoll* v. *Gottlieb,* 305 U. S. 165; *Davis* v. *Davis,* 305 U. S. 32.)

In the *Sherrer* case (*supra*) a wife left her husband in Massachusetts, went to Florida and filed a bill of complaint for divorce. Her husband retained Florida counsel, entered a general appearance and filed an answer. The court, after a hearing during which defendant (p. 346) "failed to cross-examine or to introduce evidence in rebuttal", granted a divorce to the wife. Findings of bona fide residence, jurisdiction of the parties and subject matter were made part of the decree of divorce. Later, the husband sought to invalidate the decree in Massachusetts and sought further to have declared invalid his former wife's subsequent marriage. The Supreme Court reversed the Massachusetts decision to the contrary and held that Massachusetts was compelled to accord full faith and credit to the Florida decree based as it was upon the appearance of both parties with full opportunity to litigate the matter of domicile which the husband tried to relitigate in Massachusetts. "Under such circumstances", the court said (p. 348), "there is nothing in the concept of due process which demands that a defendant be afforded a second opportunity to litigate the existence of jurisdictional facts."

The court declared that the findings of the Florida court, "resolved by judicial determination" (p. 349), had little to do with "the relative merits of the policies in Florida and Massachusetts with respect to divorce and related matters. Nor do we understand the decisions of this Court to support the proposition that the obligation imposed by Article IV, § 1 of the Constitution and the Act of Congress passed thereunder amounts to something less than the duty to accord *full* faith and credit to decrees of divorce entered by courts of sister States." (Pp. 354–355.) Thereafter the court reiterated its holding in the *Williams* case (*supra*) that a decree ex parte in nature could be re-examined as to the findings of jurisdiction and approved such scrutiny by sister States where the divorce was in effect a unilateral proceeding; but it high-lighted the distinction in the case before it by saying (p. 356): "It is quite another thing to hold that the vital rights and interests involved in divorce litigation may be held in suspense pending the scrutiny of courts of sister States of findings of jurisdictional fact made by a competent

court in proceedings conducted in a manner consistent with the highest requirements of due process in which the defendant has participated.''

Hence, since a divorce based on the domicile of one spouse and entered without appearance by the nonresident spouse is rebuttably presumed valid, it may be attacked collaterally for the purpose of demonstrating defective jurisdiction because of absence of proper domicile and it is entitled to full faith and credit only if the attack fails to prove colorable domicile. But a divorce based upon the domicile of one spouse only, where the defendant appears and answers, is conclusively valid and entitled to full faith and credit. And no relitigation of the *bona fides* of the sole domicile is permitted to any sister State.

Insofar as the question of recognition of foreign divorces based upon individual domicile of the party plaintiff and the appearance and answer of a nonresident defendant spouse has been investigated in New York, the law of this jurisdiction is consistent with the holdings of the Supreme Court in the *Sherrer* and *Coe* cases (*supra*). (*Kinnier* v. *Kinnier*, 45 N. Y. 535; *Ruger* v. *Heckel*, 85 N. Y. 483; *Tiedemann* v. *Tiedemann*, 172 App. Div. 819, affd. 225 N. Y. 709; *Frost* v. *Frost*, 260 App. Div. 694; *Senor* v. *Senor*, 272 App. Div. 306, affd. 297 N. Y. 800.) These cases have all prohibited collateral attack where the foreign divorce was based upon appearance and answer.

Plaintiff, however, claims that such cases involve attacks on foreign decrees by one or the other party to them. She seeks to distinguish these cases on the ground that she was not a party to the Florida decree of divorce; and, as a stranger to it, can attack it collaterally in this action.

If recognition of foreign divorce decrees were based upon the estoppel or comity principles, plaintiff's contention would warrant serious consideration. However, it seems clear that recognition of foreign divorce decrees granted under circumstances as exist here is now being compelled by the full faith and credit clause. Since the constitutional mandate will be satisfied with nothing less than '' full faith and credit '' (*Sherrer* v. *Sherrer*, *supra*), such third-party attack is also barred.

Plaintiff cites no persuasive appellate authority for her position to the contrary. She does, of course, press her point for permissible third-party collateral attack by stressing the holding in *Urquhart* v. *Urquhart* (272 App. Div. 60, affd. 297 N. Y. 689). But I fail to see how that case aids her. In it the court permitted a child of the dissolved marriage to question the

decree. While logically, under the present positive law that full faith and credit must be accorded to foreign decrees, the *Urquhart* decision (*supra*) itself may be questioned, I concur with the conclusion reached by the court, as an exception to the rule against collateral attack. Such exception is justified on the ground that the State's interest in preserving the legitimacy of a child in that case was a circumstance paramount to other considerations. But that conclusion should be confined to the facts of the case. Another case of little assistance to plaintiff here is *Matter of Lindgren* (293 N. Y. 18). A child was also involved there. However the court did not place the right of collateral attack on the fact of an unaffected stranger to the foreign decree, but on the ground that a *nunc pro tunc* attempt to appear in a foreign action for divorce was unavailing for conclusive full faith and credit under the principle of the *Williams* v. *North Carolina* case (*supra*).

Great reliance is placed by plaintiff on the dictum in *Senor* v. *Senor* (*supra*). This case merely held that a party who obtained a divorce decree in Nevada upon the other spouse's appearance could not thereafter impeach that decree collaterally in New York on an alleged ground of lack of jurisdiction for improper domicile, where the issue of domicile was previously raised and litigated in the Nevada action. This is hardly authority for a proposition not then before the court that a third party could succeed in doing what the court's decision denied to the parties before it. Analysis of the dictum discloses that its reasoning is based upon the theory that a divorce decree based upon personal service or appearance by the defendant " is not entitled to full faith and credit and is, therefore, subject to collateral attack in another State " (p. 311). Insofar as this dictum is inconsistent with the United States Supreme Court decisions in *Sherrer* v. *Sherrer* (*supra*) and *Coe* v. *Coe* (*supra*) it must be deemed overruled. It is to be noted also, that the dictum relies upon *Andrews* v. *Andrews* (188 U. S. 14) as authority for its rationale. In discussing the *Andrews* case (*supra*) the United States Supreme Court said: " On its facts, the *Andrews* case presents variations from the present situation. But insofar as the rule of that case may be said to be inconsistent with the judgment herein announced it must be regarded as having been superseded by subsequent decisions of this Court. The *Andrews* case was decided prior to the considerable modern development of the law with respect to finality of jurisdictional findings. One of the decisions upon which the majority of the Court in that

case placed primary reliance, *Wisconsin* v. *Pelican Insurance Co.*, 127 U. S. 265 (1888), was insofar as pertinent, overruled in *Milwaukee County* v. *White Co.*, 296 U. S. 268 (1935). The *Andrews* case, therefore, may not be regarded as determinative of the issues before us." (*Sherrer* v. *Sherrer, supra,* p. 353.)

Plaintiff also cites *Lane* v. *Lane* (188 Misc. 435) decided by a colleague whose opinions I respect. But the *Lane* case (*supra*) followed the dictum of *Senor* v. *Senor* (*supra*) and placed great reliance upon *Andrews* v. *Andrews* (*supra*) both of which authorities have been considered. I have shown their diminishing effect on the problem before me.

There is respectable and substantial authority, on the other hand, for the proposition that a third party — a stranger to the divorce proceeding — cannot collaterally attack in New York a decree of divorce of a sister State based upon the appearance and answer of the nonresident spouse. (*Kinnier* v. *Kinnier,* 45 N. Y. 535, *supra*; *Ruger* v. *Heckel,* 85 N. Y. 483, *supra*; *Shea* v. *Shea,* 270 App. Div. 527; *Holloway* v. *Holloway,* 187 Misc. 388.)

In the *Shea* case (*supra*) plaintiff had obtained an Illinois divorce from her former husband Kilgallon upon Kilgallon's appearance and answer. The decree included a finding of jurisdiction of the parties and the subject matter of the action. Thereafter plaintiff married Shea, defendant's testator. In the action before the court, plaintiff sought a judgment declaring herself to be Shea's widow. The defendants attempted to attack the Illinois decree collaterally and to examine Kilgallon before trial. The Appellate Division, Second Department, denied the motion to examine and stated that there is a distinction between " the effect given *in this State* to foreign divorce decrees based on constructive service, and those based upon personal appearance * * *. The former is invalid on its face and ineffectual, except for grounds in the nature of estoppel (*Krause* v. *Krause,* 282 N. Y. 355), while the latter is valid on its face and is accorded full effect in this State." (Pp. 529, 531.) The court stated that neither plaintiff nor Kilgallon could challenge the Illinois decree because it is valid on its face.

" It is conclusive upon both of them. In this State, in personal appearance cases, a foreign divorce decree may not be attacked collaterally where the issue of residence was contested in the foreign jurisdiction (*Tiedemann* v. *Tiedemann,* 172 App. Div. 819, affd. 225 N. Y. 709, writ dismissed 251 U. S. 536; *Schneider* v. *Schneider,* 232 App. Div. 71, 73; s. c. 238 App. Div. 792, 263 N. Y. 641; *Kinnier* v. *Kinnier,* 45 N. Y. 535), nor where, although

the opportunity to do so was present, the issue was not litigated." (P. 530.)

The determination as to domicile is *res judicata,* the court said, as would be any other relevant issue of fact, and (p. 530), " As the original parties thereto may not attack the judgment, the defendants, strangers herein, may not do so (*Hynes* v. *Title Guarantee & Trust Co.,* 273 N. Y. 612, 615). Defendants' testator is not deemed to be ' one whose rights have been directly invaded '; and even if they were invaded, he would be required to make the attack directly. (*Arcuri* v. *Arcuri,* 265 N. Y. 358, 361.) It would be intolerable to allow a third party or a stranger collaterally to disturb the validity of a matrimonial status or judgment where both the original parties thereto appeared and were barred from questioning its validity. To afford such an opportunity would give rise to widespread social disorder and create a fertile field for blackmail."

The court emphasized its distinction between divorces in which there was jurisdiction in personam over the person of the defendant from those in which there is no appearance, and stated that as to the former (pp. 532–533) " Such a judgment is immune to collateral attack. No one else has standing to challenge the decree or the changed status. This is so because the action is in rem, insofar as it relates to a marital *res,* and all third parties are bound by an adjudication * * * of the *res,* which is of a character that satisfies the law of this State. Hence, strangers may not attack the decree collaterally."

In *Kinnier* v. *Kinnier* (45 N. Y. 535, *supra*) a second spouse sought an annulment on the grounds that a prior Illinois judgment of divorce obtained against his wife by her former husband was void, although she had appeared and answered in the Illinois action. In sustaining a demurrer and dismissing the complaint, the court pointedly said (pp. 538–539): " If the Illinois judgment was binding upon the parties to it, and if the defendant and her former husband were divorced by that judgment, as between themselves, their marriage was *not in force* when the plaintiff and defendant were married."

The court observed that the question of residence was litigated in the Illinois action and that this State could not scrutinize the *bona fides* of that residence. Its decision was placed squarely upon the principle of full faith and credit. The decree, it stated (p. 543) " effectually divorced the parties to it, and their marriage is no longer in force in any legal sense. The plaintiff in this action has not been defrauded, nor is he injured by it.

" The plaintiff was entitled to marry a marriageable person, and though she may not have been, in other respects, all he anticipated or all that was desirable; yet she was competent to marry, because her former marriage was not *then in force,* and being competent, it is of no legal consequence to the plaintiff how she became so. Conceding fraud as alleged, he cannot avail himself of it. His success in this case would have no effect upon the status of the former husband, while the position of the defendant would be anomalous. By the judgment in this action, she would be declared the wife of her former husband, and by the judgment of another court, equally binding upon her, she would be declared not to be his wife. She could not claim marital rights from either husband, and it would be, at least, hazardous to marry another."

On similar facts in *Ruger* v. *Heckel* (85 N. Y. 483, 484, *supra*) the court was even more specific: " In bringing this action the plaintiff meddled with a matter which did not concern him. * * * It is impossible to discover any ground in law or morals upon which his complaint can stand. In refusing to listen to him the court does not aid in giving effect to a judgment obtained by fraud. It regards him as a suitor without a cause of action and rejects his petition, because he is not aggrieved. The parties to the judgment do not complain, nor does either of them ask aid from the court. On the contrary they do not come in. The court which rendered the judgment had jurisdiction over the subject-matter and the parties, and they are bound by it."

On the basis of these cases, therefore, it seems impossible to hold that a divorce decree is being accorded the *full* faith and credit required to be accorded it by a sister State, and at the same time decide that a party to it is not thereby sufficiently divorced to have the capacity to contract a valid marriage to a second spouse.

The decisions relied on are consistent with sound public policy and the old law of the *Kinnier* v. *Kinnier* (*supra*) and *Ruger* v. *Heckel* (*supra*) rationale must be deemed to have been revived by the latest United States Supreme Court decisions, if indeed the law ever was otherwise.

Allowing a second spouse to maintain this action places all persons who have participated in foreign divorce proceedings based upon appearance and answer by the defendant, in the impossible position of being divorced without the capacity to remarry. Any subsequent marriage contracted must be deemed

a marriage " at will " (Enforcement by Estoppel of Divorces without Domicile, 61 Harv. L. Rev. 326, 333); and, if pastures look greener elsewhere, can be terminated at the whimsy of a second spouse who becomes disconsolate after years of taking the benefits of a matrimonial status. If such second spouse be accorded the power to upset a marriage long enjoyed, for reasons financial, amatory or neurotic let us examine its effect upon others concerned in the exercise of such an option. The discarded spouse finds himself divorced by a decree which he is told must be binding upon him by one court, but unmarried by another, because of the second spouse's successful action. His first spouse is put on notice that somewhere a court has scrutinized the divorce and found it wanting, and a second marriage would similarly be at the mercy of another. In an action maintained thereafter by that other party, a court might very well, however, go to the other way and determine that the divorce was valid. The combinations and permutations of inconsistencies in matrimonial status resulting from a decision contrary to the one here made would be endless, unsavory litigation brewed interminably, and the heartbreak and suffering of literally thousands of persons would be incalcuable. Fortunately, the law is otherwise.

For the reasons given, therefore, I decide that this plaintiff cannot succeed in her attempt collaterally to attack the Florida decree by which defendant's first wife divorced him. I am constrained to this conclusion by the commands of full faith and credit. Consequently, all objections by defendant directed to the admission of evidence tending to impeach that decree are sustained, and all such evidence is stricken from the record. Defendant's motion for judgment dismissing the complaint is granted.

I find, however, that the defendant has abandoned the plaintiff and left her wholly unprovided for and that he has failed to provide for their infant child. The defendant was not sincere in making to the court a statement disclosing the amount of his income. I, therefore, fix the sum of $25 as the amount to be paid by defendant for the support of the child of the parties with proper provisions for visitation to be entered in the judgment.

The plaintiff may if she is so advised bring an appropriate action for separation on the ground of abandonment, in which action provision could be made for her support and maintenance.

Settle decision and judgment accordingly.