### BOSWELL v. BOSWELL.
No. 1464.

Circuit Court, Martin County.

December 10, 1970.

Heiman & Crary, Stuart, for the plaintiff.

Elton H. Schwarz, Stuart, for the defendant.

**D. C. SMITH, Circuit Judge.**

This cause has come on for trial in due course. The court has heard the testimony of the parties, the witnesses produced by them and argument of counsel.

The world will be a better place without a detailed resume of the meretricious relationship between the parties prior to their marriage. Suffice to say they did, finally, get married.

The plaintiff asserts that the defendant's Mexican divorce, obtained from a prior husband shortly before the marriage of the parties hereto, is void. The evidence shows that the plaintiff urged the defendant to obtain the Mexican divorce, if she preferred to do so. The plaintiff and the defendant traveled together by automobile to Mexico for the defendant to obtain the divorce. He was with her when she obtained it, he paid for it, and two weeks or so after obtaining it, they were married in the state of Nevada on May 9, 1969, and from such date until sometime in February, 1970, lived together as husband and wife in Martin County, Florida, except for two trips to Europe by the defendant.

In deMarigny v. deMarigny, 43 So.2d 442, the Supreme Court of Florida stated that a judgment favorable to the plaintiff under such circumstances would amount to a judicial determination that both the plaintiff and the defendant had lived in a manifest state of adultery and would open wide an avenue of fraud of a character most difficult to discover. On page 446 appears this statement of the law —

> Assuming the court should, in a sense, represent the State as an interested third party in a proceeding of this kind, it is our view that the interests of society, would be better served by an adoption of the lesser of two evils — non datur tertium. We mean that if the parties are left as the court found them an alleged fraud upon the court might thus appear to be sanctioned; yet, on the other hand, a judgment favorable to appellant-petitioner would amount to a judicial determination that both the appellant-petitioner and the appellee-respondent Alfred F. deMarigny had lived in a manifest state of adultery and would open wide an avenue for fraud (not to mention blackmail) of a character most difficult to discover. If the appellant-petitioner may maintain the instant suit it would be possible for any party to a fraudulent divorce decree, which is valid on the face of the record, to conspire with another person to enter into a marriage with him or her with the sole purpose in mind of having said spouse thereafter bring a proceeding to impeach the divorce decree and thus accomplish indirectly, by means of such conspiracy and fraud, that which could not be accomplished directly. It is our conclusion that the lesser evil would result from a judgment unfavorable to the appellant-petitioner's position and that decency, good morals and the welfare of society would be more nearly satisfied by such ruling. Certainly, such a decision would be less inimicable to the interests

of our citizens as a whole than one favorable to the appellant-petitioner for the latter, in our opinion could lead to "widespread social disorder." See Shea v. Shea, 270 App. Div. 527, 60 N.Y.S.2d 823, at page 827.

The decree of divorce which is under attack by the appellant-petitioner has not adversely affected the status or rights of the appellant-petitioner which existed at the time of said decree. Indeed, it has protected her (and such protection continues) in her after-acquired marital status for without it her relationship with deMarigny necessarily would have been classified as meretricious.

As aforestated, the appellant-petitioner was neither defrauded nor injured for she occupied no status and had no rights at the time of the entry of the divorce decree sought to be invalidated which were or could have been affected thereby. The law on this subject is as stated in Freeman on Judgments, Vol. 1, page 636, Section 319: "It must not, however, be understood that all strangers are entitled to impeach a judgment. It is only those strangers who, if the judgment were given full credit and effect would be prejudiced in regard to some preexisting right, that are permitted to impeach the judgment. Being neither parties to the action, nor entitled to manage the cause, nor appeal from the judgment, they are by law allowed to impeach it whenever it is attempted to be enforced against them so as to affect rights or interest acquired prior to its rendition."

The plaintiff, Perry Boswell, Jr., was not a party to the Mexican divorce decree. Such decree was between the defendant and her prior husband.

In Coltun v. Coltun, 167 So.2d 336, the Third District Court of Appeal clearly held that a second husband has no standing to contest his wife's previous decree of divorce and cited various authorities.

From a consideration of all of the evidence, the court finds that it has jurisdiction of the parties hereto and of the subject matter hereof, that the relationship of husband and wife now exists between the parties, that the plaintiff has failed to prove his complaint or either count thereof and that the same should be dismissed, that the defendant has proved her counterclaim and that she is entitled to a divorce from the plaintiff upon the ground of extreme cruelty, that the equities are with the defendant and against the plaintiff, and that the defendant is entitled to a divorce, a lump sum alimony award, attorney's fees, costs and restoration of her former name.

Upon consideration, it is ordered and adjudged —

(1) That the plaintiff's complaint, and each count thereof, be and the same is hereby dismissed.

(2) That the defendant, Margareta Benson, sometimes known as Margareta Boswell, under her counterclaim, is granted a divorce

from the plaintiff, Perry Boswell, Jr., a vinculo matrimonii, and the said parties and each of them are hereby forever freed from the bonds of matrimony heretofore existing between them and from the obligations arising therefrom.

(3) That the defendant, Margareta Benson, sometimes known as Margareta Boswell, is entitled to a lump sum alimony award of $12,250 from the plaintiff, Perry Boswell, Jr., and that the plaintiff shall pay the same in the following manner: $3,250 on December 15, 1970 and $750 on January 15, 1971 and a like sum on the same date of each and every month thereafter until said sum of $12,250 is fully paid.

(4) That the plaintiff, Perry Boswell, Jr., shall pay to Elton H. Schwarz, the attorney for the defendant, the sum of $5,000, which the court finds and determines to be a reasonable attorney's fee to be received from the plaintiff for his services herein rendered for the defendant. Same shall be paid by December 21, 1970, and is in addition to the temporary attorney fee heretofore awarded to said attorney.

(5) That the plaintiff shall also pay defendant's said attorney all costs incurred by the defendant herein in the sum of $513.73.

(6) That the defendant, Margareta Benson, sometimes known as Margareta Boswell, is hereby restored to her former name, Margareta Magni.

(7) That the court reporter is directed not to transcribe the testimony of proceedings herein unless requested to do so by one of the parties hereto and in that event the party requesting the transcript shall pay for its preparation.